898 P.2d 1081

**Gordon BLISS, Plaintiff–Appellant,**

v.

**Althea BLISS, Defendant–Respondent.**

No. 20515.

Supreme Court of Idaho,
Coeur d'Alene, April 1994 Term.

June 26, 1995.

Bruce H. Greene, Sandpoint, for appellant.

Althea R. Bliss, Priest River, pro se.

SILAK, Justice.

This appeal concerns the classification and division of the parties' community and separate property estates upon their divorce. Two parts of the magistrate's order have been appealed: (1) the requirement that Gordon Bliss's separate estate reimburse the community $13,000 which the community spent during the marriage to satisfy Gordon's separate debts; and (2) the classification of forty-eight acres of real estate as Althea Bliss's separate property pursuant to a quitclaim deed. We affirm the classification of the real estate as Althea Bliss's separate property, but reverse the requirement that Gordon Bliss's separate estate reimburse the community $13,000.

## I.

### BACKGROUND

Gordon Bliss (Gordon) has been a chiropractor since 1948. In 1980, Althea Bliss (Althea) (now surnamed Walker) began working as a receptionist/bookkeeper in Gordon's chiropractic offices. In November 1982, Gordon and Althea were married. Their marriage lasted until December 1990. There were no children born of the marriage.

During the parties' marriage, Gordon paid a $15,000 judgment debt to his former wife which was incurred before Gordon married Althea. Gordon paid $10,000 of this debt using his separate assets. However, he paid the remaining $5,000 out of community funds earned during the parties' marriage. He also used community funds to pay a judgment debt of $8,000 for attorneys fees incurred in Gordon's prior divorce action.

Also during the marriage, Gordon executed a "Quit Claim Deed" in which he conveyed to Althea "as her separate property" several contiguous parcels of land comprising about forty-eight acres. Althea recorded this deed with the county recorder's office on April 28, 1988. At trial, Gordon testified that on ad-

vice of counsel, he transferred such properties to Althea to prevent attachment by the Internal Revenue Service (I.R.S.). The I.R.S. reportedly denied a tax shelter Gordon claimed in the 1970's resulting in an outstanding tax liability of approximately $75,000.

On December 4, 1990, the magistrate entered a partial decree awarding the parties a divorce on grounds of irreconcilable differences. Trial of the property division issues occurred over three days in January and February 1991. In May 1991, the magistrate issued findings of fact and conclusions of law. The magistrate concluded that the quitclaim deed by Gordon to Althea of the forty-eight acres was a valid conveyance as between the parties, and therefore, the forty-eight acres was Althea's separate property. The magistrate also ordered Gordon's separate estate to reimburse the community estate $13,000 for the community assets expended during the marriage to satisfy Gordon's separate debts ($5,000 judgment debt to his former wife and $8,000 in pre-marital attorney fees). The magistrate also found that both Gordon and Althea contributed some of their separate funds to the community estate, and that they sufficiently traced the source of their separate funds so as to allow reimbursement to them from the community estate. The magistrate ordered that Gordon is entitled to be reimbursed from the community $84,151.91, and that Althea is entitled to be reimbursed $34,314.28.

Gordon appealed to the district court, and the district court affirmed the magistrate on the issues of the quitclaim deed, and the reimbursement to the community for payment of his separate debts. Gordon now seeks further review of the same issues in this Court.

## II.

### STANDARD OF REVIEW

■ "This Court reviews the decision of a magistrate judge independently of a district judge sitting in an appellate capacity, but with due regard to the district judge's ruling." *Ireland v. Ireland,* 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993). "We will uphold the magistrate's findings of fact if supported by substantial and competent evidence." *Id.* On issues of law, we exercise free review. *Ausman v. State,* 124 Idaho 839, 841, 864 P.2d 1126, 1128 (1993).

■ The division of community property is subject to the sound discretion of the trial court, whose determination will be upheld on appeal in the absence of a clear showing of an abuse of discretion. *McNett v. McNett,* 95 Idaho 59, 61, 501 P.2d 1059, 1061 (1972).

## III.

### REIMBURSEMENT TO THE COMMUNITY FOR FUNDS SPENT TO PAY SEPARATE DEBTS

■ Gordon claims the magistrate had no authority to order his separate estate to reimburse the community estate $13,000 which it paid for Gordon's separate debts. It is well established that when community funds are used to enhance the value of one spouse's separate property, such enhancement is community property for which the community is entitled to reimbursement, unless such funds used for enhancement are intended as a gift. *E.g., Suchan v. Suchan,* 106 Idaho 654, 661, 682 P.2d 607, 614 (1984); *Suter v. Suter,* 97 Idaho 461, 465, 546 P.2d 1169, 1173 (1976); *Gapsch v. Gapsch,* 76 Idaho 44, 53, 277 P.2d 278, 283 (1954). In *Gapsch,* this Court held that community funds spent to reduce the principal of a mortgaged indebtedness on one spouse's separate property retain their character as community property and can be reimbursed. As the Court explained, in situations where a spouse's equity in property has been increased through the application of community funds to the payment of a debt on the property, the measure of reimbursement to the community should be the amount by which such equity is enhanced. *Id.*

■ The facts of this case take it outside the direct application of the reimbursement rule as cited in *Suchan, Suter,* and *Gapsch.* The community funds were not used to enhance the value of Gordon's separate property. They were used to pay Gordon's antenuptial, unsecured debts. We can locate no

Idaho statute or case allowing reimbursement under these circumstances. Indeed, we believe allowing reimbursement would be inconsistent with established precedents.

■ The measure of the reimbursement for community expenditures on separate property is the increase in value of the property attributable thereto, not the amount or value of the community contribution. *Suter, supra; Hiatt v. Hiatt,* 94 Idaho 367, 368, 487 P.2d 1121, 1122 (1971). The party seeking such reimbursement to the community carries the burden of demonstrating that the community expenditures have enhanced the value of the separate property, and the amount of the enhancement. *Hooker v. Hooker,* 95 Idaho 518, 521, 511 P.2d 800, 803 (1972). Althea has not shown an enhancement of the value of any of Gordon's separate property through community payments toward his separate debts.

■ The magistrate found Gordon's "separate estate was 'enhanced' by the elimination of those separate debts." In other words, Gordon's net worth was enhanced, not the value of any identifiable property. However, our past precedents have required enhancement of separate *property*. *See Suchan, supra,* 106 Idaho at 661, 682 P.2d at 614 (community entitled to reimbursement of $60,000 for improvements to spouse's separate land); *Hooker, supra,* 95 Idaho at 521, 511 P.2d at 803 (reimbursement to community denied where spouse failed to show amounts expended on separate property and amount of enhancement); *Hiatt, supra,* 94 Idaho at 368–69, 487 P.2d at 1122–23 (equitable lien allowed against separate property for community funds used to liquidate indebtedness and make improvements to separate property); *Shovlain v. Shovlain,* 78 Idaho 399, 402, 305 P.2d 737, 738 (1956) (reimbursement to community allowed for payments on mortgage liens on real property and indebtedness on personal property); *Gapsch, supra,* 76 Idaho at 53, 277 P.2d at 283 (equitable lien allowed against separate property for community funds expended to reduce the principal of mortgage indebtedness on separate property).

■ Parties often marry with separate antenuptial debts, and those debts are payable from community property. *Holt v. Empey,* 32 Idaho 106, 110, 178 P. 703, 704 (1919) (community property is liable for separate debts of husband); *Gustin v. Byam,* 41 Idaho 538, 545, 240 P. 600, 603 (1925); Crapo, *Equal Management of Community Property: Creditors' Rights,* 13 Idaho L.Rev. 177, 178 (1977). We recognize, however, that a spouse with control of community funds should not be permitted to use such control as "a weapon ... to deplete, if not destroy, the community property and at the same time enhance the value of his separate property." *Gapsch, supra,* 76 Idaho at 53, 277 P.2d at 283. Accordingly, there may be egregious circumstances of unfair dealing which should result in reimbursement to the community, even if no separate asset was enhanced. However, absent a showing that a spouse fraudulently or selfishly depleted community property to preserve separate assets, we decline to depart from existing precedents. *See Gustin v. Byam, supra,* 41 Idaho at 545–546, 240 P. at 603 (wife seeking to set aside execution sale of community property failed to prove allegation of conspiracy to defraud her of her interest in community property).

Here, the record reveals Gordon paid $10,000 of the $15,000 judgment debt to his former wife with separate property, and contributed significantly of his separate assets toward community property. The magistrate held he was entitled to be reimbursed from the community $84,151.91. There is no claim that Gordon purposefully and unfairly sought to deplete Althea's share of community property to preserve his separate property. With no separate property of Gordon's having been enhanced, and no claim of unfair dealing, we hold the magistrate erred in ordering Gordon's separate estate to reimburse the community $13,000, and accordingly, reverse.

## IV.

## DETERMINATION THAT QUITCLAIMED PROPERTY WAS WIFE'S SEPARATE PROPERTY

■ The magistrate found that both spouses contributed separate funds to the

purchase of the parcels known as the "ranch property." Thereafter, Gordon executed a quitclaim deed to forty-eight unencumbered acres of the ranch property. Althea recorded the deed with the county recorder's office the next day. The deed provided in pertinent part,

> THE GRANTOR, GORDON F. BLISS, a married man, ... for and in consideration of ONE DOLLAR and OTHER GOOD and VALUABLE CONSIDERATION, conveys and quit claims to ALTHEA BLISS, a married woman, *as her separate property*, whose address is ..., the following described real estate....
> (Italics added, capitalization original.)

Because the deed was in writing, signed by the grantor, and included the name and address of the grantee, it constituted a valid conveyance of legal title to real property. I.C. § 55–601;[1] *see, e.g., Erb v. Kohnke*, 121 Idaho 328, 337, 824 P.2d 903, 912 (Ct.App. 1992). In cases such as this, I.C. § 32–906(2) creates a presumption that the conveyed property is separate:

> (2) Property conveyed by one spouse to the other shall be presumed to be the sole and separate estate of the grantee and only the grantor spouse need execute and acknowledge the deed or other instrument of conveyance notwithstanding the provisions of section 32–912, Idaho Code;....

Under this statute, the forty-eight acres is presumed to be Althea's sole and separate property. Pursuant to Rule 301 of the Idaho Rules of Evidence, Gordon then had the burden of going forward with evidence to rebut or meet the presumption, although it remained Althea's burden of persuasion to demonstrate that the forty-eight acres was separate. The effect of the statutory presumption under Rule 301 is that the party in whose favor the presumption operates is relieved from having to adduce further evidence of the presumed fact until the opponent introduces substantial evidence of the nonexistence of the fact. *Bongiovi v. Jamison*, 110 Idaho 734, 738, 718 P.2d 1172, 1176

(1986). The magistrate held that Gordon failed to rebut the statutory presumption of separate property.

At trial, Gordon testified that Althea gave no consideration for the execution of the deed to her. Accordingly, Gordon argues it was incumbent upon Althea to show he intended the forty-eight acres to be a gift, and claims she failed to meet her burden of demonstrating a gift. Gordon further testified his only intent in executing the deed was to prevent the I.R.S. from seizing the property to satisfy tax judgments against him. The magistrate admitted, over the objection of Althea's counsel, a notice of tax levy from the I.R.S. showing Gordon owed over $75,000. However, Althea offered conflicting testimony as to the parties' intent when Gordon delivered the deed. Gordon asks this Court to declare the deed void for lack of consideration, and thereby hold that the forty-eight acres is community property. We decline.

■■■ Gordon attempted to overcome the presumption of separate property by offering his own statements of intent merely to shelter the property from the I.R.S., and by asserting that Althea gave no consideration for execution of the deed. However, Gordon's statements regarding intent and consideration were inadmissible to contradict the deed's clear language. In *Hall v. Hall*, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989), we reiterated that where a deed is plain and unambiguous, the intention of the parties must be determined from the deed itself. "Oral and written statements are generally inadmissible to contradict or vary unambiguous terms contained in a deed." *Id.* Here, not only did Gordon "convey" the property to Althea, thereby raising the presumption of separateness under I.C. § 32–906(2), the deed expressly states the land is conveyed "as her *separate* property." Further, the deed unambiguously declares that it is "in consideration of ONE DOLLAR and OTHER GOOD and VALUABLE CONSIDERATION." Gordon's extrinsic evidence is inadmissible to contradict these clear state-

---

1. I.C. § 55–601. Conveyance—How made.—A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing. The name of the grantee and his complete mailing address must appear on such instrument.

ments. *Hall,* 116 Idaho at 484, 777 P.2d at 256. Thus, the evidence offered to rebut the statutory presumption of I.C. § 32–906(2) was legally insufficient.

The policy considerations underlying the rule in *Hall* and similar cases, as well as the statute of frauds, are well founded and enduring. In a case where parties sought to attack warranty deeds of land by claiming that contemporary oral agreements created a trust relationship, this Court declared:

> As we understand the statute [of frauds] above quoted, *it was intended to prevent just such a class of proof and to preclude the possibility of titles becoming subject to the capricious memories of interested witnesses.* The statute was enacted to guard against the frailties of human memory and the temptations to litigants and their friendly witnesses to testify to facts and circumstances which never happened. Experience had convinced both jurists and lawmakers that the only safe way to preserve and pass title to real property is by a written conveyance subscribed by the grantor. *The beneficial effects of this statute would be destroyed if a grantor could come in years afterwards and submit oral testimony to show that the conveyance was not intended as an absolute grant but was only intended to create a trusteeship in the grantee.*

*Dunn v. Dunn,* 59 Idaho 473, 484, 83 P.2d 471, 475–76 (1938) (emphasis added, citations omitted). Likewise, Gordon should not be allowed, by extrinsic evidence, to contradict the plain language of the deed and claim he never really intended to convey the land. The magistrate correctly ruled that evidence regarding the parties' intent and conversations when the deed was executed was inadmissible to contradict the deed. We find no error in the magistrate's determination that Gordon failed to rebut the statutory presumption of separate property. Accordingly, the magistrate's characterization of separate property is affirmed.

## V.

### CONCLUSION

The magistrate's order requiring Gordon Bliss's separate estate to reimburse the community estate $13,000 is reversed, and the case remanded for further proceedings consistent with this opinion. The order's classification of forty-eight acres of real estate as Althea Bliss's separate property is affirmed. No costs are awarded on appeal.

McDEVITT, C.J., and JOHNSON and TROUT, JJ., concur.

BISTLINE, J., sat, but did not participate in the opinion.