COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Annunziata
Argued at Richmond, Virginia


RICHARD L. BARKER

OPINION BY
v.   Record No. 0812-97-2    JUDGE ROSEMARIE ANNUNZIATA
JUNE 16, 1998
NANCY J. BARKER


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

Andrea R. Stiles (Williams, Mullen,
Christian & Dobbins, on briefs), for
appellant.

Lawrence D. Diehl for appellee.


Richard L. Barker (husband) appeals the order of the trial

court granting him a divorce from Nancy J. Barker (wife) on the

basis that the trial court erred in determining the spousal

support and equitable distribution awards.  Specifically, husband

argues that the court overestimated his earning capacity for

purposes of spousal support, improperly applied the tracing

doctrine, and failed to properly consider the statutory factors

in determining equitable distribution.  We affirm in part and

reverse in part.[1]

Husband and wife were married on December 10, 1978.  Wife's

_____

[1]Wife has filed a motion to delete or disregard a portion of
husband's designation of the record for the appendix, alleging
that a portion of the appendix is improperly before this Court.
Husband did not respond to this motion.  Our review of the record
supports wife's allegations.  Accordingly, we grant the motion
and will not consider or rely upon the portion of the appendix
that was improperly filed.

three children from a previous marriage lived with the parties for a number of years. At the time of the marriage, husband owed his former spouse over $50,000 in spousal support, payable over a period of ten years. Although wife did not work outside the home for the majority of the marriage, both parties contributed funds to buy their first marital home. During the marriage, husband was employed as an upper management business executive.

Husband admits that he committed adultery during the period 1986-1989. After husband told wife of the affair in 1989, the two reconciled and joined an adultery self-help group. In 1990 or 1991, wife discovered evidence that husband had resumed his affair. After her discovery, wife moved out of the marital bedroom, although she remained in the marital home. Husband lost his job in May 1991, although he continued to receive income from his position until May 1992. On January 30, 1993, husband moved out of the marital home, and wife filed for divorce.

The trial court referred the case to a commissioner, who held hearings and filed a report. After the parties filed exceptions to the commissioner's report, the trial court issued a letter opinion sustaining husband's exception as to the commissioner's recommendation for spousal support and related issues and overruling most of husband's exceptions. After holding an evidentiary hearing, the court awarded wife less spousal support than recommended by the commissioner.

I.

Spousal Support

After taking evidence as to the past and present circumstances of the parties, the commissioner to whom the case had been referred noted that, "[w]hile husband is currently unemployed, the commissioner feels that he has the ability to be employed at an income which would warrant an award of spousal support to wife of $2,000.00 per month." The trial court elected not to follow the commissioner's recommendation, and held additional hearings on the issue of spousal support.

In its letter opinion of July 17, 1996, the trial court noted that husband, age 62, had been temporarily employed at a rate of $75,000 per year from August 1995 to October 1995, but that husband had virtually no income for 1994, and was currently unemployed. The court also noted that husband had attended real estate school, had obtained a Virginia real estate license, had taken the necessary steps to obtain a New Jersey real estate license, and "hoped" to earn $2,000 per month. The court explained that wife, in her fifties, earned $300 per week designing jewelry, had been diagnosed with carpal tunnel syndrome, and could earn a maximum of $25,000 per year as a secretary. The court concluded, "[l]ooking first at the considerable resources the parties have resulting from equitable distribution and the pertinent factors under § 20-107.1 according to the evidence, the court will require that husband pay to the

3

wife . . . the sum of $600.00 per month."  The trial court did not find that either party was voluntarily under-employed or unemployed, and did not impute income to husband or wife. Husband argues that the trial court erred in ordering him to pay spousal support to wife because he has no income, actual or imputed.

Whether and how much spousal support will be awarded is a matter of discretion for the trial court.  Jennings v. Jennings, 12 Va. App. 1187, 1196, 409 S.E.2d 8, 14 (1991) (citing McGuire v. McGuire, 10 Va. App. 248, 251, 391 S.E.2d 344, 347 (1990)). Code § 20-107.1 requires a court "to consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery," in determining whether to make an award of spousal support.  If the court determines that an award should be made, the court is required to consider all the factors outlined in Code § 20-107.1.  See Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997) (citing Woolley v. Woolley, 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986)).  Among the other statutory factors, the trial court must evaluate the earning capacity of both parties.  See Stumbo v. Stumbo, 20 Va. App. 685, 691, 460 S.E.2d 591, 594 (1995) (citing Goetz v. Goetz, 7 Va. App. 50, 51, 371 S.E.2d 567, 567 (1988)) (requiring the trial court to consider earning capacity); Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990) (citing McGuire, 10 Va. App. at 251, 391 S.E.2d at 347)

4

(emphasizing that the court must consider the earning capacity of both the payor and payee spouse).

Code § 20-107.1, like its predecessor Code § 20-107, authorizes courts "to consider not only earnings but also 'earning capacity.'" Jacobs v. Jacobs, 219 Va. 993, 995, 254 S.E.2d 56, 58 (1979). "Although 'earning capacity' necessarily includes actual earnings, it is a broader concept that allows the trial court to consider more than actual earnings." Frazer v. Frazer, 23 Va. App. 358, 378, 477 S.E.2d 290, 300 (1996). The spousal support award, however, "must be based upon the circumstances in existence at the time of the award." Payne v. Payne, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987). The relevant time period includes the immediate past, Stubblebine v. Stubblebine, 22 Va. App. 703, 709, 473 S.E.2d 72, 75 (1996) (en banc), as well as the "'immediate or reasonably foreseeable future.'" Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679 (quoting Young v. Young, 3 Va. App. 80, 81-82, 348 S.E.2d 46, 47 (1986)). A spousal support award may not be "premised upon the occurrence of an uncertain future circumstance." Jacobs, 219 Va. at 995-96, 254 S.E.2d at 58.

We view the evidence in the light most favorable to wife, the prevailing party below. Cook v. Cook, 18 Va. App. 726, 731, 446 S.E.2d 894, 896 (1994) (citing Steinberg v. Steinberg, 11 Va. App. 323, 325, 398 S.E.2d 507, 508 (1990)). So viewed, the evidence supports the court's assessment of each of the parties'

5

earning capacity. The court heard testimony that since the separation, wife had worked at a number of low-paying jobs. Wife's most recent job prior to the separation had been in 1986, and she had attempted but failed to bring her typing and accounting skills up to date. Wife had been diagnosed with carpal tunnel syndrome in 1980, and had four bones in her hands surgically fused together. At the time of the hearing, wife was performing piecework jewelry design, for which she was paid up to $300 per week.

The court also heard evidence that husband received his real estate license in January 1995, joined Coldwell Banker real estate company, and earned $8,497 in 1995 before taking a ninety-day position with One Call Medical. Husband worked for One Call Medical until February 12, 1996, where he earned approximately $6,000 per month. At the time of the hearing, husband had passed the New Jersey real estate examination, rejoined Coldwell Banker, and had been in training for three weeks. As a real estate agent, husband hoped to earn $2,000 per month selling real estate. This evidence supports the findings of the court, and the court did not abuse its discretion in fashioning a spousal support award of $600 per month based on this evidence.

Husband also alleges that the trial court required him to use his portion of the equitable distribution award to pay spousal support. Code § 20-107.1(8) requires the trial court to

6

consider "[t]he provisions made with regard to the marital property under § 20-107.3" in fashioning spousal support. As husband argues, however, it is improper for a trial court to treat assets divided in equitable distribution as income. Ray v. Ray, 4 Va. App. 509, 514, 358 S.E.2d 754, 757 (1987); see, e.g., Dotson v. Dotson, 24 Va. App. 40, 44, 480 S.E.2d 131, 132-33 (1997) (describing the "'distinct difference . . . between a spousal support award and a monetary award'" (quoting Brown v. Brown, 5 Va. App. 238, 246, 361 S.E.2d 364, 368 (1987))). "[A] decree which singles out this factor [regarding distribution of the marital property] to the exclusion of others, and which essentially treats the . . . spouse's marital assets as income, cannot withstand scrutiny on appeal." Zipf v. Zipf, 8 Va. App. 387, 399, 382 S.E.2d 263, 270 (1989).

The trial court did not abuse its discretion in fashioning the spousal support award. It is important to note that the trial court's decision turns on husband's earning capacity rather than imputed income or principal or income from the distribution. The trial court's letter opinion of July 17, 1996, reveals that the trial court gave primary consideration to the age and earning capacity of the parties. The court reviewed the current earnings and earning prospects of the parties, and considered the testimony of husband, wife, and the vocational expert. The court also considered the expenses claimed by each party. Finally, the court stated that it had considered "the pertinent factors under

7

§ 20-107.1."  We find that the trial court properly considered the age, expenses, distribution of assets, and earning capacity of the parties, as well as other statutory factors, in fashioning the spousal support award, and thus acted within its discretion.

## II.

### Classification of Property

The trial court affirmed the commissioner's decision to trace the contributions of both parties to the first marital home and award both parties a credit for their contributions. The commissioner recommended that "the proceeds should be divided equally with offsets to each party for their contribution of separate property when the cycle of home buying began in 1978." The commissioner recommended a credit of $23,500 for husband and a credit of $50,061 for wife to reflect each party's separate contributions to the purchase of the first marital home on John Drive. Husband excepted to this recommendation, arguing that wife could not trace $20,061 of the $50,000 she was credited to the separate contribution she made to the purchase of the marital property and that he could trace an additional $20,000 as his separate property.

In affirming the finding of the commissioner, the trial court agreed with wife that, apart from the $23,500, "any other contributions cannot be traced directly from 1978 to the current equities or properties of the parties." The court found, "[t]here is no direct tracing evidence resulting from this sale [of the John Drive home] to the present asset picture to mandate or require any additional credit where there might otherwise be on actual value tracing to current assets." The court went on to note "that the proceeds from the sale of the parties' home in

9

Richmond cannot be directly traced to a specific source [because] the many prior sale proceeds from other homes purchased during the marriage and the commingling of other funds[] mak[e] tracing difficult if not impossible."  The trial court concluded that wife's credit was justified because all of her contribution went to pay marital bills, even though $20,061 was not used to purchase the first marital residence or other identifiable asset.

A commissioner's findings of fact which have been accepted by the trial court "are presumed to be correct when reviewed on appeal and are to be given 'great weight' by this Court.  The findings will not be reversed on appeal unless plainly wrong." Rowe, 24 Va. App. at 140, 480 S.E.2d at 768 (citations omitted).

According to Code § 20-107.3(A)(3)(e), "[w]hen marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property," unless the contributed property is retraceable and not a gift.  We have explained the requirements of tracing under Code § 20-107.3(A)(3):

> In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset.  This process involves two steps:  a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset.

Rahbaran v. Rahbaran, 26 Va. App. 195, 207, 494 S.E.2d 135, 141 (1997) (citing Code § 20-107.3(A)(3)(d)-(f)).  "[T]he party

10

claiming a separate interest in transmuted property bears the burden of proving retraceability." von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997) (citing Code § 20-107.3(A)(2)).[2]

Assuming without deciding that husband's $20,000 contribution was separate property when he acquired it, we hold that the trial court did not err in finding that husband failed to present sufficient evidence of tracing to establish his claim that he should be awarded $20,000 as his separate property.

Viewing the evidence in the light most favorable to wife, husband cannot establish the separate identity of any portion of the hybrid property, or directly trace the claimed separate portion to his original contribution of separate property. In Rowe, 24 Va. App. at 136, 480 S.E.2d at 766; von Raab, 26 Va. App. at 249, 494 S.E.2d at 161; and Rahbaran, 26 Va. App. at 209-10, 494 S.E.2d at 142, we addressed the question of "multiple source tracing," in which marital and separate property are combined to acquire a single piece of hybrid property. See Brett

---

[2]It is important to note that two tracing issues are not presented by this case because they are not argued by the parties. Neither party claims that he or she is entitled to tracing of appreciation on separate assets. See Code § 20-107.3(A)(1); Mann v. Mann, 22 Va. App. 459, 464-65, 470 S.E.2d 605, 607-08 (1996); Lambert v. Lambert, 6 Va. App. 94, 104-05, 367 S.E.2d 184, 190-91 (1988). In addition, neither party addresses the gift provisions of the transmutation statute. See Code § 20-107.3(A)(3)(d)-(g); Lightburn v. Lightburn, 22 Va. App. 612, 616-17, 472 S.E.2d 281, 283 (1996); Theismann v. Theismann, 22 Va. App. 557, 578, 471 S.E.2d 809, 818 (1996) (Annunziata, J., concurring in part and dissenting in part), aff'd, 23 Va. App. 697, 479 S.E.2d 534 (1996) (en banc) (mem.).

R. Turner, Equitable Distribution of Property 266 (1994). This case, in addition, presents the additional problem of "multiple destination tracing," in which only a portion of hybrid property is used to acquire or invest in additional properties, either simultaneously or successively. Id. at 268. To determine whether a party's separate property can be retraced under such circumstances, courts have adopted widely varying approaches to address the character of withdrawals from hybrid accounts. See J. Thomas Oldham, Tracing, Commingling, and Transmutation, 23 Family L.Q. 219, 230-33 (1989) (describing approaches). Whatever approach is used, it is clear that in the absence of sufficient evidence establishing the identity of separate funds throughout the multiple investments and withdrawals, the asset in question must be deemed marital. Rahbaran, 26 Va. App. at 208-09, 494 S.E.2d at 141.

During the time in which the funds used to purchase the houses were placed in various bank and investment accounts, the parties continued to conduct withdrawal and deposit transactions on the accounts. The record contains numerous gaps in recording the simultaneous and sequential uses of the funds husband seeks to trace. The evidence showed that husband contributed the claimed $20,000 to the first marital home in Wheeling, Illinois. Similarly, wife contributed the proceeds of the sale of her separate townhouse to the purchase of the Wheeling house. The parties subsequently placed the proceeds of the sale of the

Wheeling home into an account along with the parties' paychecks, and subsequently invested a portion of the money from the account in a home in Freeland, Michigan. The record does not reveal what proportion of the money in the account represented the proceeds of the Wheeling home, and what proportion represented the parties' paychecks. When the parties sold the house in Freeland, Michigan, unspecified proceeds of the sale went into an account identified as a predecessor to the parties' Merrill Lynch Cash Management Account (CMA), which also contained an unknown amount of other marital funds. The parties moved to London, England, and then back to Connecticut. Upon their return to the United States, the parties used a portion of the money in the parties' CMA to purchase a house in Westport, Connecticut. The record does not establish the proportion of money in the CMA which represents the proceeds of the sale of the Freeland home.

The parties sold the Westport house and used at least some of the proceeds to buy a house in McLean, Virginia, the precise amount of which was not established at trial. During the same time period, the parties also owned a house in Bloomfield, Michigan, although it is unclear what funds were used to purchase the Bloomfield house. The parties sold both the McLean and Bloomfield houses, and used proceeds in the amount of $500,000 as a down payment on the Richmond, Virginia home owned at the time of separation.

Thus, the record makes clear that husband presented

13

insufficient evidence from which the court could determine the identity of his separate funds, and distinguish them from the marital property in the hybrid asset, <u>viz.</u>, the parties' last house in Richmond. Therefore, "'the unknown amount contributed from the separate source transmutes by commingling and becomes marital property.'" <u>Rahbaran</u>, 26 Va. App. at 208-09, 494 S.E.2d at 141 (quoting Turner, <u>supra</u>, at 268); <u>see also</u> <u>Minter v. Minter</u>, 432 S.E.2d 720, 725 (N.C. App. 1993) (holding that party did not carry his burden to trace transactions made on a marital account).

Applying the same tracing principles to the classification of wife's contribution, we hold that wife's evidence of tracing does not support the court's award to her in the amount of $20,061.[3] The evidence revealed, and the commissioner noted, that wife contributed $20,061 of the $50,061 credit to pay unspecified "marital bills." The evidence fails to establish that wife contributed these funds toward the value of an

---

[3] In an attempt to avoid the application of the tracing doctrine and its result, wife argues that the trial court awarded her a credit under equitable distribution principles, rather than applying tracing rules to determine her separate property under classification principles, citing <u>Pommerenke v. Pommerenke</u>, 7 Va. App. 241, 249, 372 S.E.2d 630, 634 (1988), in support. In <u>Pommerenke</u>, 7 Va. App. at 249, 372 S.E.2d at 634, we held, under a previous version of Code § 20-107.3(A), that "the restoration of a down payment made from separate property based on the application of the eleven factors of Code § 20-107.3(E), rather than the automatic restoration of such down payment, constitutes the proper application of the statute." Our reading of the rulings of the commissioner and the trial court, however, reveals that the trial court applied tracing principles to both wife and husband.

14

identifiable asset, or to the acquisition of an identifiable asset.  In short, wife has not pointed to any separate or hybrid asset owned at the time of separation to which she claims the $20,061 of her separate funds may be traced.  Accordingly, the trial court erred in identifying this portion of wife's contribution as separate.  Rahbaran, 26 Va. App. at 208, 494 S.E.2d at 141.

### III.

### Equitable Distribution Award

The trial court affirmed the commissioner's rulings on the issue of equitable distribution, and issued a final decree setting out the terms of the equitable distribution.  Husband contends that the commissioner and court erred in their consideration of the statutory factors.

A commissioner's findings of fact which have been accepted by the trial court "are presumed to be correct when reviewed on appeal and are to be given 'great weight' by this Court.  The findings will not be reversed on appeal unless plainly wrong." Rowe, 24 Va. App. at 140, 480 S.E.2d at 768 (citations omitted). The amount and form of any equitable distribution award "are matters committed to the sound discretion of the trial court, [but] 'any division or award must be based on the parties' equities, rights and interests in the property.'"  Theismann v. Theismann, 22 Va. App. 557, 565, 471 S.E.2d 809, 812 (1996) (quoting Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572,

15

577 (1992)), aff'd, 23 Va. App. 697, 479 S.E.2d 534 (1996) (en banc) (mem.). In fashioning an equitable distribution award, the trial court must consider each of the statutory factors, but may determine what weight to assign to each of them. Booth v. Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988). In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court. D'Agnese v. D'Agnese, 22 Va. App. 147, 153, 468 S.E.2d 140, 143 (1996) (citing Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992)).

A.
Consideration of Husband's Support
for Former Spouse and for Wife's Children

Husband contends that the trial court erred in giving consideration to his use of at least $50,000 of marital funds to make court-ordered support payments to a former spouse. Husband also contends that the court failed to consider his support for wife's children during the marriage.

Husband brought approximately $50,250 in intangible personal property into the marriage. Husband argued that he should receive a greater portion of the intangible property than the principal owned at the time of marriage because of the earning record of the funds, while wife argued that husband's share of the intangible property should be reduced by the spousal support paid by husband to his former wife during the marriage, which totalled more than $50,000. The trial court found that the funds

16

husband brought into the marriage were transmuted by commingling into marital property, and could not be treated as his separate property as they could not be traced to a current asset. Thus, in fashioning a monetary award which reflected this contribution, the trial court was guided by the statutory factors for equitable distribution of marital property set forth in Code § 20-107.3(E). In considering the statutory factors, the court, inter alia, balanced husband's monetary contributions to the marriage against his use of marital funds to support his former spouse, and awarded husband $44,856 for the intangible personal property, with the remainder of the assets divided equally.

The specific question to be addressed by this Court is whether the payment of separate debt with marital funds may be considered by the trial court as a factor in fashioning an equitable distribution award. We hold that the court may, in the exercise of its discretion, consider payment of separate debt with marital funds in fashioning an equitable distribution award.

While the specific question husband raises is a matter of first impression in Virginia, the principles underlying its resolution are well established. It is beyond dispute that the trial court is required to consider all the factors set forth in Code § 20-107.3(E) in determining the amount of any monetary award and the division of marital property. See, e.g., Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). Code § 20-107.3(E)(2) requires the court to consider "[t]he

17

contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of [the] marital property of the parties." "[C]ircumstances that affect the [marital] partnership's economic condition are factors that must be considered for purposes of our equitable distribution scheme." Aster, 7 Va. App. at 5, 371 S.E.2d at 836. This Court has made clear that both affirmative and negative monetary contributions to the marital partnership are to be considered. See, e.g., O'Loughlin v. O'Loughlin, 20 Va. App. 522, 526, 458 S.E.2d 323, 325 (1995); Traylor v. Traylor, 19 Va. App. 761, 766, 454 S.E.2d 744, 747 (1995). Indeed, there appears to be general agreement with this principle. Turner, supra, at 565. Those contributions which impact on the value of the marital estate have been of particular concern to this Court. O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326; Smith v. Smith, 18 Va. App. 427, 431, 444 S.E.2d 269, 273 (1994); Gamer v. Gamer, 16 Va. App. 335, 341, 429 S.E.2d 618, 623 (1993); Aster, 7 Va. App. at 5–6, 371 S.E.2d at 836. A court need not find waste in order to consider negative contributions in fashioning an equitable distribution award. See O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326; cf. Booth, 7 Va. App. at 29, 371 S.E.2d at 573 (holding that unpaid attorneys' fees constitute debt which the trial court properly considered in fashioning equitable distribution award although the debt was not waste).

In dual classification states such as Virginia, the use of

18

marital funds for non-marital purposes can be considered as a factor in determining an equitable distribution award. Turner, supra, at 572. For example, where marital funds are used to pay the separate debts of one of the parties, a court may properly consider that fact as a negative monetary contribution to the marital property. Adams v. Adams, 443 S.E.2d 780, 781 (N.C. App. 1994) ("A reduction in the separate debt of a party to a marriage, caused by the expenditure of marital funds . . . is properly considered as a distributional factor . . . ."); Fenske v. Fenske, 542 N.W.2d 98, 102-03 (N.D. 1996) (holding that trial court did not err in considering husband's premarital debts paid off during the marriage with commingled funds in the equitable distribution award). In addition, we have found that support obligations arising from a prior marriage may constitute such a separate debt. Hayes v. Hayes, 21 Va. App. 515, 519, 465 S.E.2d 590, 592 (1996) (finding that debt incurred to pay child support to a former spouse was separate debt); see Orlandi v. Orlandi, 23 Va. App. 21, 29, 473 S.E.2d 716, 720 (1996) (indicating that a new spouse is not required to support the other spouse's children), reh'g en banc granted, appeal withdrawn (1996).

Based on Virginia's statutory scheme and the cases which have applied it, we hold that the trial court could properly consider husband's use of marital funds to pay his prior support obligations as a negative monetary contribution in fashioning its equitable distribution award. Accord Dobbyn v. Dobbyn, 471 A.2d

1068, 1076-78 (Md. Ct. Spec. App. 1984); <u>Jensen v. Jensen</u>, 877 S.W.2d 131, 135 (Mo. Ct. App. 1994); <u>McGee v. McGee</u>, 648 A.2d 1128, 1133-34 (N.J. Super. Ct. App. Div. 1994); Turner, <u>supra</u>, at 594.[4]  This view is premised on the clear language of Code § 20-107.3(E) and the underlying legislative intent to allow the court to consider all contributions to the acquisition, care, and maintenance of the marital property, both positive and negative.   See Code § 20-107.3(E)(2).  Consideration of the use of marital funds to pay separate debt, such as support to a former spouse, properly falls under the trial court's consideration of the statutory factors.  As such, this case does not turn on the application of the doctrine of "waste."[5]  In short, under Virginia's statutory scheme, which encompasses broad directives to the trial court to consider the parties' monetary and

---

[4]In <u>Bliss v. Bliss</u>, 898 P.2d 1081, 1083-84 (Idaho 1995), the Supreme Court of Idaho held that a husband's use of marital funds to pay attorney's fees and a judgment from a prior divorce did not meet the requirements of the community property "reimbursement to the community" doctrine because the community funds "were used to pay [his] antenuptial, unsecured debts" rather than "used to enhance the value of [his] separate property," and therefore fell outside the scope of the "reimbursement" doctrine.

[5]The doctrine of waste is implicated where a spouse dissipates assets "in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy."  <u>Booth</u>, 7 Va. App. at 27, 371 S.E.2d at 572.  In <u>Rosenfeld v. Rosenfeld</u>, 597 So. 2d 835, 837 (Fla. Dist. Ct. App. 1992); and <u>In re Marriage of Burgess</u>, 568 N.W.2d 827, 828-29 (Iowa 1997), courts held that support payments to a former spouse do not constitute waste.  We express no opinion on whether support payments to a former spouse might, in a proper case, constitute waste, as that issue is not before us.

20

nonmonetary contributions to the marital estate, the trial court properly considered husband's use of marital funds to pay support to his former spouse.

Husband also contends that the commissioner failed to consider his support for wife's children by a prior marriage in determining the equitable distribution. After the parties married, they supported three of wife's children and one of husband's children in the marital home. The trial court concluded that the commissioner considered husband's support of wife's children under Code § 20-107.3(E)(10), the so-called "catchall" factor, notwithstanding the absence of any reference to the factor in the commissioner's report.

The court could consider husband's support for wife's children pursuant to two statutory provisions: (1) as a "contribution[], monetary and nonmonetary, of each party to the well-being of the family"; and (2) as an "other factor[] as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Code § 20-107.3(E)(1), (10); accord Cox v. Cox, 882 P.2d 909, 920 (Alaska 1994) (citing Burcell v. Burcell, 713 P.2d 802, 805 (Alaska 1986)). Husband's contribution to support for wife's children, however, need only be considered under the factors outlined in Code § 20-107.3; he is not entitled to a dollar-for-dollar credit for contributions he may have made. See Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630

21

(1989).  The commissioner heard evidence on husband's support for wife's children, and the trial court ruled that the commissioner had considered this factor.  Husband does not point to any evidence that this conclusion is unjustified or unsupported by the record, and we find none.

B.

Consideration of Fault

Code §§ 20-107.1 and 20-107.3 require a court to consider "the circumstances and factors which contributed to the dissolution of the marriage," including adultery, in determining an equitable distribution award.  A party claiming adultery by the other party must prove it by clear and convincing evidence.  Seeman v. Seeman, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987).  Condonation of adultery nullifies the legal effect of the adultery, but "[c]ondoned adultery is revived where the guilty party resumes his association with his paramour."  Cutlip v. Cutlip, 8 Va. App. 618, 621, 383 S.E.2d 273, 275 (1989) (citing McKee v. McKee, 206 Va. 527, 532, 145 S.E.2d 163, 166 (1965)).

In Aster, 7 Va. App. at 5-6, 371 S.E.2d at 836-37, this Court held that a trial court must consider fault in terms of its economic impact on the marital estate.  In O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326, however, we held that a court may consider a party's negative nonmonetary contributions to a marriage arising out of his or her adultery regardless of its economic impact.  We also "reaffirmed our holding in Aster that

22

fault could not be used as a 'wild card' to justify an otherwise arbitrary award." Theismann, 22 Va. App. at 569, 471 S.E.2d at 815 (citing O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326).

The commissioner found that husband committed adultery during the marriage. The commissioner stated that he had considered the relevant statutory factors in fashioning the equitable distribution award, but did not explicitly rely on the finding of adultery in explaining the award. The trial court granted a divorce on the basis that the parties lived separate and apart for more than one year.

After husband excepted to the commissioner's finding, the trial court reviewed the issue of adultery. The court affirmed the commissioner's finding, explaining the evidence supported the commissioner's finding that "the earlier condonation was eliminated by later conduct even though the later affair may have extended to the time the parties had become separated." The court also noted that the evidence supported a finding that "wife was reasonably suspect that relations with the first paramour had resumed, contributing to the dissolution of the marriage." The court stated that although the adultery did not have direct economic impact, the commissioner could consider the adultery as a negative nonmonetary contribution to the marriage, "if indeed he did."

Husband argues that the evidence showed that the evidence was insufficient to support a finding of uncondoned adultery and

23

that the court should not have considered his adultery for economic impact or as a negative nonmonetary contribution. We do not reach the question of the sufficiency of the evidence because we conclude that the commissioner and trial court did not base their equitable distribution award on husband's adultery. The commissioner and trial court both referred to the evidence of husband's adultery, but did not explicitly base any distribution decision on husband's adultery; upon noting that both parties had made nonmonetary contributions to the marriage, the commissioner merely mentioned that husband had committed adultery during the marriage. In turn, the trial court noted that the commissioner could consider husband's adultery as a negative nonmonetary contribution under O'Loughlin, but expressed skepticism that the commissioner had actually done so.

In the absence of a specific finding by the commissioner or trial court that husband's adultery affected the distribution of assets, we will not presume that the court improperly relied on husband's adultery. See Pommerenke v. Pommerenke, 7 Va. App. 241, 251, 372 S.E.2d 630, 635 (1988) ("Viewing the totality of the evidence as it relates to other factors in Code § 20-107.3(E), we would be required to speculate to assign merit to [wife's] argument. The trial court in fashioning the monetary award certainly did not state that it was influenced by or attributed any particular weight to the fact that it found [wife] guilty of adultery."). The brief mention of husband's adultery

24

among many other factors considered by the commissioner and court does not support an inference that the commissioner and trial court improperly relied on husband's adultery, particularly in the absence of a specific, express finding that they did so.  Id. Husband has not shown otherwise.  See D'Agnese, 22 Va. App. at 153, 468 S.E.2d at 143 (citing Lutes, 14 Va. App. at 1077, 421 S.E.2d at 859) (explaining that the party seeking relief on appeal bears the burden to show reversible error).

Husband also argues that the court erred in adopting the commissioner's finding that wife was without legal fault in the dissolution of the marriage.  In order to constitute legal fault, marital cruelty "must be so serious that it makes the relationship intolerable or unendurable."  McLaughlin v. McLaughlin, 2 Va. App. 463, 467, 346 S.E.2d 535, 537 (1986) (citing Hoback v. Hoback, 208 Va. 432, 436, 158 S.E.2d 113, 116 (1967)).  All of the evidence of marital cruelty came from husband, and wife and her three children all contradicted husband's testimony.  Under the governing standard of review, we find that the trial court resolved this conflict in the evidence in wife's favor, and will not reverse the trial court's determination.  See Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

C.

Allocation and Consideration of Marital Debt

In determining an equitable distribution award, a court must

25

consider the "debts and liabilities of each spouse [and] the basis for such debts and liabilities." Code § 20-107.3(E)(7). Husband contends that the commissioner and trial court failed to properly consider the debt associated with the marital property known as Rochester Housing Associates Two Limited Partnership and the preparation of the parties' joint 1992 tax return by DeLoitte & Touche. Husband introduced evidence that Rochester Housing Associates was encumbered by $22,400 in debt, which he reduced to $17,000 after the parties' separation, and that he paid Deloitte & Touche approximately $2,300 to prepare the parties' joint 1992 tax return.

Husband's argument is without merit. In allocating the marital liabilities, the commissioner found that husband should receive a credit of $44,856 against the intangible marital assets. In making this recommendation, the commissioner stated that, "[h]usband should not be allowed an offset for the Rochester Housing Associates account or the DeLoitte and Touche bill when making an accounting, the commissioner having already taken these into account in making an equitable distribution of the property." Similarly, evidence of husband's $5,400 payment to reduce the debt on the Rochester Housing Associates account was before the commissioner, and there is no reason to believe that the commissioner did not take the payment into account. The trial court addressed husband's arguments, affirmed the commissioner, and noted that the commissioner properly resolved

26

the conflicts in the evidence.

We find no basis in the record in support of husband's contention that the court failed to consider husband's debt. Husband is not entitled to a dollar-for-dollar credit for post-separation contributions made to the care, acquisition, or maintenance of marital property. von Raab, 26 Va. App. at 249-50, 494 S.E.2d at 161 (citing Ellington, 8 Va. App. at 56, 378 S.E.2d at 630). The court was not presented with an issue of valuation, in which debt must be fully considered in establishing value,[6] but rather with the issue of fashioning an equitable distribution award, in the exercise of its discretion after considering the statutory factors. See Booth, 7 Va. App. at 28, 371 S.E.2d at 573. Unless a party can show evidence to the contrary, we presume that the trial court properly applied the law to the facts. Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995) (citing Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977)).

Because we find that the trial court improperly awarded a $20,061 credit to wife, we reverse its decision and remand so that the trial court may address the issue.

Affirmed in part, and
reversed in part.

---

[6]See, e.g., Trivett v. Trivett, 7 Va. App. 148, 151, 371 S.E.2d 560, 562 (1988) (holding that a valid debt secured by marital property reduces the value of the property by the amount of the debt).

27

Benton, J., concurring in part and dissenting in part.

I concur in Parts I and II; however, I dissent from Part III.  Therefore, I would reverse the decree and remand for reconsideration of the monetary award for the reason stated in Part II and for the additional reasons contained below.

(A)

The evidence proved that the husband brought into the marriage $239,000 in assets that were used for marital purposes.  During the marriage, he annually earned substantial salaries, including $409,000 in one year, that were used to support the wife and her children from a prior marriage.  At trial, the wife argued that, during the course of their nineteen-year marriage, the husband "depleted the marital estate by $50,000 to pay a separate debt [of court-ordered support to his former spouse]."  Apparently believing the evidence proved dissipation, the trial judge agreed with the wife's argument and "conclude[d] that the commissioner recognized [the wife's] argument that [the husband's] contributions to the marriage should be reduced by spousal support he paid to his ex-wife and that . . . [the commissioner] considered these payments."  The majority opinion rules that the trial judge did not err because the husband's payments were appropriately considered under Code § 20-107.3(E)(2) as a negative monetary contribution to the marriage.  I believe both rulings are incorrect.

"Code § 20-107.3, providing for equitable distribution, is

28

based on the notion that marriage is an economic partnership in which the parties, through varying contributions, monetary and nonmonetary, to the acquisition, maintenance, and care of property and to the well-being of the family, may accumulate marital wealth." Dietz v. Dietz, 17 Va. App. 203, 210, 436 S.E.2d 463, 467 (1993). Code § 20-107.3 mandates an equitable distribution of the parties' accumulated marital wealth. See Gamble v. Gamble, 14 Va. App. 558, 570, 421 S.E.2d 635, 642 (1992). Thus, we have ruled that "what has always been contemplated by the Code § 20-107.3 scheme for equitable distribution of the marital wealth of the parties . . . [is] a distribution which will equitably 'compensate a spouse for his or her contribution to the acquisition of property obtained during the marriage.'" Id. at 569, 421 S.E.2d at 642 (citation omitted).

A trial judge may not apply the statute in a manner that does not further the statute's purpose and policy. "Every statute is to be read so as to 'promote the ability of the enactment to remedy the mischief at which it is directed.'" Bulala v. Boyd, 239 Va. 218, 227, 389 S.E.2d 670, 674 (1990) (citation omitted). Nothing in the letter or the spirit of the statute authorizes judges to examine the parties' lifestyle choices and conclude post facto that they could have better used their incomes to accumulate more wealth. Thus, a trial judge may not, under the guise of applying Code § 20-107.3(E), rotely

consider a party's use of income or marital assets to pay a debt during the course of marriage as a factor in the distribution of marital property or in making a monetary award. We have recognized that the statute is not a license for judges to make a post facto examination of the spending of the husband and wife during the marriage to determine whether they made prudent decisions in using their incomes or marital assets to pay for necessities of life. Thus, we previously have stated that, "at least until the parties contemplate divorce, each is free to spend marital funds." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988).

Although some of the factors in Code § 20-107.3(E) might be broadly read to encompass future conduct, in Marion v. Marion, 11 Va. App. 659, 401 S.E.2d 432 (1991), we noted that the legislative purpose had to be considered in making equitable distributions. See id. at 668, 401 S.E.2d at 438. We held that "'Code § 20-107.3 provides for the equitable distribution of the accumulated marital wealth between the marital parties; it does not contemplate consideration of the future ability of one spouse to accumulate what will be separate property or the future needs of the other spouse.'" Id. (citation omitted). See also Stainback v. Stainback, 11 Va. App. 13, 21-22, 396 S.E.2d 686, 691-92 (1990).

We also have ruled that not all past conduct of the parties during a marriage affects the equitable distribution of property.

30

In Smith v. Smith, 18 Va. App. 427, 444 S.E.2d 269 (1994), the wife contended the trial judge erred by not considering as a factor the "husband's dissipation of marital assets, which she alleges occurred . . . during the course of his fifteen-year extramarital affair." Id. at 430, 444 S.E.2d at 272. In rejecting that contention, we ruled as follows:

> Our case law uniformly holds that the challenged use of funds must be "in anticipation of divorce or separation . . . [and] at a time when the marriage is in jeopardy." Wife is correct in her assertion that the Court in Booth defined waste only "generally" and did not purport to set forth "an exclusive definition." Nevertheless, to date, Virginia's appellate courts have applied this rule only to funds spent contemporaneously with the marital breakdown, and we will not expand the definition to cover expenditures made for a fifteen-year period which were not specifically for the purpose of depleting the marital estate and where there was no evidence that there was an irreconcilable breakdown of the marriage. Accordingly, we conclude that the trial court did not err by finding that wife failed to show that husband's pre-separation expenditures constituted dissipation of marital assets.

Id. at 430-31, 444 S.E.2d at 272 (citations omitted).

During the marriage, the parties may at any time properly use marital income that they earn for nonmarital purposes. Only when one party claims an impropriety or improper dissipation of marital assets that impacts a statutory purpose should the court intervene and construct a financial accounting of income and expenditures during the marriage. No valid purpose of Code § 20-107.3 is served by analyzing the debts the parties paid

31

during the marriage to determine which spouse gained the greater benefit from payment of the debt and then using that benefit analysis to support a set-off to the other spouse when making a distribution of property upon divorce. Obviously, if the debt bears some significance to the purpose of the property division, such as dissipation in contemplation of or after marital dissolution, the evidence establishes a nexus to the statutory purpose.

In this case, the husband's payment during the marriage of spousal support to a former spouse bears no significant relationship to the statutory purpose of Code § 20-107.3. It is not unusual that parties enter into marriage with either or both having separate antenuptial debts. The payments of spousal support in this case were not made to obtain or maintain a separate asset that the husband can sell, trade, or transfer for money after the divorce. No inequity justifies the trial judge's use of these payments to increase the property distributed to the wife on divorce. The husband's spousal support payments were no different than any other expenditure made during the marriage for a purpose solely benefitting the husband, such as dues to a golf association, membership in a racquetball club, contributions to a church building fund, dues at a private club, or expenditures on a hobby that did not result in the acquisition of an asset.

To authorize a set-off or credit in the distribution of the marital property because certain expenditures made during the

marriage benefitted the husband finds no support in the language or purpose of the statute. Indeed, the lack of logic in this decision is doubly manifest because the record contains no indication that the trial judge considered the favorable tax benefits the parties received as a result of the spousal support payments. To the extent the wife contends the husband's payments deprived her of the ability to spend the money during the marriage for something that directly benefitted her, she ignores the benefit the tax savings provided.

No evidence in this record tends to prove the husband's payment of spousal support to his former spouse pursuant to a court's order affected any factor contained in Code § 20-107.3(E). Clearly, the trial judge confused this issue with "dissipation" or "waste."

> Although not an exclusive definition[,] "waste" may be generally characterized as the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy. Just as a court may consider positive contributions to the marriage in making an equitable distribution award, it can also consider "negative" contributions in the form of squandering and [d]estroying marital resources. The goal of equitable distribution is to adjust the property interests of the spouses fairly and equitably. The mechanism to accomplish that goal is the monetary award. To allow one spouse to squander marital property is to make an equitable award impossible. On the other hand, at least until the parties contemplate divorce, each is free to spend marital funds.

33

Booth, 7 Va. App. at 27, 371 S.E.2d at 572.

The Virginia cases do not support either the trial judge's ruling or the majority's opinion. In Gamer v. Gamer, 16 Va. App. 335, 429 S.E.2d 618 (1993), the husband and wife received during the marriage money that should have been sent to the husband's former spouse. The husband and wife spent the money for living expenses. See id. at 338-39, 429 S.E.2d at 621. The debt, which was created by their receipt and expenditure of money that was not theirs, was reduced to a judgment and became a lien against the marital residence. See id. at 341, 429 S.E.2d at 623. Applying Code § 20-107.3(E)(7), we ruled that "[w]here the debt was secured by marital assets or was a lien on marital property, the purpose, nature, and character of the debt and who benefitted from it were factors to be considered by the chancellor in distributing the property or in fashioning the monetary award." Gamer, 16 Va. App. at 341, 429 S.E.2d at 623. Obviously, when the husband and wife misappropriated and spent funds during the marriage that were not theirs and thereby created a debt that resulted in a lien on marital property, that debt was a marital debt created by the husband and the wife.

In Hayes v. Hayes, 21 Va. App. 515, 465 S.E.2d 590 (1996), we did not rule that the husband's share of the marital estate could be reduced by the amount of child support payments the husband made during the marriage for the child of his prior marriage. Because the wife had made loans to the husband "for

34

the benefit of the husband's separate property," id. at 515, 465 S.E.2d at 591, the trial judge found that the husband's debt to the wife was separate debt. See id. at 519, 465 S.E.2d at 592. We upheld the trial judge's finding that the debt was a separate debt, and we ruled that the trial judge erred in not determining pursuant to Code § 20-107.3(C) whether the husband was required to repay the borrowed funds. See id. We remanded the matter to the trial judge to determine whether to order the husband to pay the debt that arose from the loan. See id. In the case we decide today, no claim has been made that the husband borrowed funds from the wife or that the husband used the wife's funds to improve his separate asset.

The decision in Orlandi v. Orlandi, 23 Va. App. 21, 473 S.E.2d 716 (1996), has no bearing on the issues that arise in this case. Orlandi concerns issues of child support between two divorced parties. No issue of equitable distribution or the interpretation of Code § 20-107.3 arose in that case.

The majority erroneously treats this issue as if the husband's spousal support payments were a contribution made to enhance a nonmarital asset that is extant at the divorce. It was not. The husband's payment of court-ordered spousal support was not a ruse to fund a separate asset. Many of the cases cited by the majority were not decided under Virginia law and contain instances in which a spouse spent marital assets to obtain or enhance a separate asset. In those instances, courts of other

35

states have deemed that a diversion of marital funds to enhance a separate asset creates a marital interest in the enhanced property.

The evidence in McGee v. McGee, 648 A.2d 1128 (N.J. Super. A.D. 1994), proved that prior to their marriage, the husband purchased the wife's house to save it from foreclosure and to pay debts the wife owed. See id. at 1129. He paid only $63,000 for the house even though it was valued at $150,000, exclusive of furnishings and the surrounding eleven acres of land. The value of the furnishings and eleven acres was unknown. See id. After the marriage, the husband "denuded the house of $134,000 of equity" by borrowing against the property, used the borrowed money to pay an obligation to his former spouse, and then conveyed the property to himself and the wife. Id. at 1131. The court ruled that the husband's conduct effectively used the wife's separate assets to pay the husband's pre-existing obligations to his former wife. See id. at 1134. Because of the husband's misuse of the wife's house prior to and during the marriage, the court ruled that under New Jersey law, "[t]he case can be viewed from the vantage point of the shared enterprise of marriage beginning before the ceremonial act, or as one in which equitable remedies such as constructive trust, quasi contract or quantum meruit are invocable for equitable reasons." Id. at 1134. That ruling is not dispositive of issues in this case.

In Dobbyn v. Dobbyn, 471 A.2d 1068 (Md. Ct. Spec. App.

36

1984), the court was not concerned with a party's payment of support to another spouse during the marriage as a basis for making a monetary award.  The issue in <u>Dobbyn</u> was whether the trial judge could consider the divorced husband's new and future family obligations under Maryland's statutory requirement to consider '"[t]he economic circumstances of each spouse at the time the award is to be made.'"  <u>Id.</u> at 1077.

In <u>Jensen v. Jensen</u>, 877 S.W.2d 131 (Mo. Ct. App. 1994), the court ruled that the husband's payment of child support to a former spouse and to a former lover <u>after</u> the husband's separation from his current wife was the husband's separate debt.  See <u>id.</u> at 135.  Thus, when the husband liquidated marital assets during the separation to pay those debts, the court set aside those funds as credits against the husband's share of marital assets.  <u>See</u> <u>id.</u>

In <u>Fenske v. Fenske</u>, 542 N.W.2d 98 (N.D. 1996), the trial judge found "that the parties had paid off their individual and marital debts 'by commingling everything they had.'"  <u>Id.</u> at 102.  Nothing in the <u>Fenske</u> opinion suggests that the trial judge gave either party a distribution based upon a party paying a pre-marital debt with marital funds.

North Carolina courts have ruled that "[a] reduction in the separate debt of a party to a marriage, caused by the expenditure of marital funds, is, in the absence of an agreement to repay the marital estate, neither an asset nor a debt of the marital

37

estate."  Adams v. Adams, 443 S.E.2d 780, 781 (N.C. Ct. App. 1994).  Under that state's law, any such reduction in the separate debt may only be considered as a factor if a justifiable reason exists.  See id. (citing N.C. Gen. Stat. § 50-20(C)(12)).

In the case before us, the trial judge accepted the commissioner's recommendation "that [the husband's] contributions to the marriage should be reduced by spousal support he paid to his ex-wife."  I believe that the following reasoning, employed in Rosenfeld v. Rosenfeld, 597 So.2d 835 (Fla. Dist. Ct. App. 1992), is more pertinent to the issues that arise in this case:

> The wife in this case took the position at the time of the divorce that the trial court should revisit the parties' expenditures throughout the marriage, and should retroactively decide that certain of the expenditures should not have been made. . . . [T]his amounted to a request for "a financial accounting of all of the marital years to determine which spouse was the more prudent investor and spender.  We do not choose to start down such a path with this case."

> In the present case the wife complains because the husband paid court-ordered support to his previous wife, and made other payments required by the divorce decree.  The wife's position is entirely without merit.

> \*    \*    \*    \*    \*    \*    \*

> Payments made to an ex-wife or children pursuant to a court order cannot be considered as waste or misuse of the marital assets of the successor marriage.  Those obligations were incurred before the successor marriage, and obviously the subsequent spouse was well aware of them prior to the successor marriage.  In any event, a party cannot refuse to make court ordered payments on the grounds that he or

38

> she has now remarried.  Likewise, payment of
> expenses incident to a prior dissolution,
> such as attorneys' fees, does not constitute
> waste or misuse of marital funds.

Id. at 837 (citation omitted) (footnotes omitted).

Using similar reasoning, the court in In re Marriage of Burgess, 568 N.W.2d 827 (Iowa App. 1997), ruled that, in the division of marital property upon divorce, a wife was not entitled to a set-off or credit for the husband's payment during the marriage of spousal and child support to his former wife. See id. at 828.  The court concluded that it would be inequitable to consider those payments as a distribution factor because "the payment of the [support] obligation [by the husband] was a reasonable and expected aspect of the particular marriage."  Id.

The majority correctly notes that Bliss v. Bliss, 898 P.2d 1081 (Idaho 1995), involved a division of property on divorce in a community property state.  However, the principles applied to "community" property are not completely unrelated to issues that arise regarding "marital" property.  In Bliss, the court held that the use of community funds to pay antenuptial debts, where such payment is unrelated to the enhancement of a separate asset, is not a basis upon which a party upon divorce may seek reimbursement to the community funds.  See id. at 1084.  That reasoning is valid when analogized to the issue in this case.

Simply put, Code § 20-107.3(E) does not authorize judges to enrich one of the parties based upon the mere finding that the other party, who was the sole source of income during the

39

marriage, used portions of that income to pay debts that the party incurred prior to the marriage. In particular, no evidence tended to prove that the husband's payment of spousal support to his former spouse negatively contributed to his marriage to the wife. For these reasons, I would reverse the trial judge's equitable distribution decision and remand for reconsideration.

(B)

Although the trial judge expressly noted that he was reducing the husband's equitable distribution award for payments the husband made under a court order to support the husband's spouse of a prior marriage, the record contains no indication that in making the monetary award the trial judge gave any consideration to the husband's support, during the marriage, of his wife's children from a prior marriage. The trial judge noted that "[t]here is no mention by the commissioner of these matters [in the report]." Yet, the trial judge assumed the matter was considered because the commissioner "does say he has considered all the relevant factors which, of course, includes the catch all one in § 20-107.3(E)." The irony of the disparity between the treatment of this issue and the issue of the husband's payment of spousal support to his former wife is palpable.

The evidence proved that when the wife's former spouse stopped paying child support, the husband supported the three children from the wife's prior marriage beginning when the oldest child was age fifteen. One of the wife's children continued

40

living in the house four years past the child's majority. The husband's salary was the family's sole source of financial support.

On remand, I would direct the trial judge to expressly consider the husband's payments and conduct which contributed to the well-being of the family. See Code § 20-107.3(E)(1).

(C)

The evidence proved that the husband paid $5,400 post-separation to reduce a marital debt that was associated with an asset that had no value. I find no evidence in the record that the trial judge adjusted the award to consider that payment. Likewise, the evidence proved that the husband paid $2,282 for the preparation of the parties' joint tax return and received no credit for that payment. I would also require the trial judge to reconsider on remand adjustments for those payments.