597 So.2d 835 (1992)
William ROSENFELD, Appellant,
v.
Maria Elena P. ROSENFELD, Appellee.
No. 90-716.
District Court of Appeal of Florida, Third District.
March 17, 1992.
On Motion for Rehearing May 12, 1992.
*836 Greene & Marks and Cynthia L. Greene, Miami, Fred Dellapa, Coral Gables, for appellant.
Elser, Greene & Hodor and Cynthia L. Greene, Miami, for appellant on rehearing.
Mark E. Pollack and Stuart L. Tockman, for appellee.
Stuzin & Camner and Mark E. Pollack, Miami, for appellee on rehearing.
Before FERGUSON, COPE and LEVY, JJ.
PER CURIAM.
William Rosenfeld appeals from a final judgment of dissolution of marriage in which the substantial majority of the parties' assets were awarded to the wife. We affirm in part and reverse in part.
This was a five and one-half year marriage with no children. Both parties had been married previously and had support obligations resulting from previous marriages. Both parties were employed in the fragrance industry. William was a national sales manager for the fragrance division of Foremost-McKesson, until the company decided to terminate that division in 1986. From February, 1987 until December, 1988, he was employed in his wife's business, Femme Internationale, Ltd., a closely held Florida corporation equally owned by Maria Elena and her mother. Maria Elena started this business in 1981, after she and William started dating and after William was employed at McKesson.
As national sales manager for McKesson, William was responsible for buying products for the company to retail. To this end, William purchased millions of dollars worth of fragrance products from Femme. Thus, McKesson's decision to leave the industry severely hurt Femme since it was Femme's largest account. New financing kept the business afloat, but it is no longer as profitable as it was in the past.
Both parties brought property into the marriage. Maria Elena owned a house in Miami and property in Polk County, in addition to her 50 percent interest in Femme. William had an interest in two limited partnerships. After the parties were married, they purchased the marital home, a condominium, two cars and interests in two more limited partnerships. It appears from the record that joint marital funds were used to acquire assets, as well as maintain the parties' respective nonmarital assets.
Marital funds were also used to provide some support for William's parents, to provide a loan to his son and to his sister, to pay alimony to his first wife and to pay other expenses, such as attorneys' fees, associated with his divorce. Maria Elena *837 had a son from a previous marriage whom she supported.
Since neither party was seeking spousal support, the sole issue before the trial court was the distribution of marital property. William asked for equitable distribution of the assets, including any enhanced value. Maria Elena argued strenuously that because William had spent marital assets on such expenses as alimony and loans to his family, he had "wasted" those assets and was not entitled to receive any distribution at the end of the marriage.[1] The trial court agreed, ruling in part, "The court specifically finds that the Husband has wasted and misused marital assets. The balance of the assets should be awarded to the Wife, as the Husband has already received his equitable distribution." Maria Elena was awarded the marital home and all of the fixtures and furnishings, the condominium and all of its fixtures and furnishings, all of her interest in Femme, all of the funds remaining in the joint accounts, including substantial sums which she had removed from a joint account at the time the parties separated, the property in Polk County, all of her jewelry, including pieces given to her by William, a car valued at $12,500 and one half interest in each of the four limited partnerships.
We conclude that the judgment must be reversed. The wife in this case took the position at the time of the divorce that the trial court should revisit the parties' expenditures throughout the marriage, and should retroactively decide that certain of the expenditures should not have been made. As the Fourth District has described it, this amounted to a request for "a financial accounting of all of the marital years to determine which spouse was the more prudent investor and spender. We do not choose to start down such a path with this case." Gentile v. Gentile, 565 So.2d 820, 823 (Fla. 4th DCA 1990).[2]
In the present case the wife complains because the husband paid court-ordered support to his previous wife, and made other payments required by the divorce decree. The wife's position is entirely without merit.
To begin with, once William and Maria Elena married, each spouse's income during the marriage was marital income. Thus, William's own income from his own job was marital income. It follows that in this case, as in most cases, marital income is the primary source, and possibly the only source, available with which to pay the prior support obligation.
Payments made to an ex-wife or children pursuant to a court order cannot be considered as waste or misuse of the marital assets of the successor marriage. Those obligations were incurred before the successor marriage, and obviously the subsequent spouse was well aware of them prior to the successor marriage. In any event, a party cannot refuse to make court ordered payments on the grounds that he or she has now remarried. Likewise, payment of expenses incident to a prior dissolution, such as attorneys' fees, does not constitute waste or misuse of marital funds.[3]
The wife argued that certain gambling trips should not have been made during the marriage. Since the wife participated *838 in those trips, she will not now be heard to complain.
The wife contended that a loan of $6,000 should not have been made to the husband's sister, and $5,500 to the husband's adult son from the prior marriage. We see no basis on which to characterize either transaction as waste or misuse of marital assets. The trial court has discretion, however, to assign those assets  the amounts receivable from the sister and son  to the husband as a portion of his equitable distribution.
Similarly without merit is the extraordinary suggestion that the husband should not have assisted in the support of his parents.[4] In short, the finding of waste and misuse of assets was in error, as was the equitable distribution based thereon.
Since there must be further proceedings on remand, we note that this dissolution proceeding is subject to the equitable distribution statute. Section 61.075, Fla. Stat. (1991). Equitable distribution of marital assets is presumptively equal, but may be varied if there is good reason to do so. See Bergstrom v. Bergstrom, 559 So.2d 82, 83 (Fla. 3d DCA), review denied, 574 So.2d 139 (Fla. 1990), and cases cited therein; § 61.075(1), Fla. Stat. (1991).
Pursuant to this statute, "the court shall set apart to each spouse that spouse's nonmarital assets and liabilities and shall distribute between the parties the marital assets and liabilities in such proportions as are equitable, after considering all relevant factors... ." Section 61.075(1), Fla. Stat. (1991). The factors are enumerated in the statute. "Nonmarital assets and liabilities include ... [a]ssets acquired and liabilities incurred by either party prior to the marriage... ." Id. § 61.075(5)(b). However, marital assets "include ... the enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both... ." Id. § 61.075(5)(a)(2).
In this case Maria Elena brought separate property into the marriage, i.e., the house in Dade County and the Polk County property. During the marriage, marital funds were used for mortgage payments, taxes, and maintenance. The proceeds from the sale of the Dade County home in 1989 did not automatically belong solely to Maria Elena, as the trial court ruled. Maria Elena is entitled to a special equity, but any enhancement in value or appreciation resulting from those expenditures or the efforts of the parties constitute a marital asset subject to equitable distribution. The entitlement to the proceeds must be recalculated under the statute.
The same analysis is true for the limited partnerships. It was stipulated at trial that one of the partnerships was William's premarital asset. If marital funds or efforts of a party were used to enhance the value of this fund, the enhancement will become a marital asset subject to equitable distribution after computing William's special equity. In a second limited partnership William's interest was a nonmarital asset, but during the marriage, William used marital funds to purchase his first wife's interest in that partnership. William would have a special equity in the portion of this limited partnership which he owned prior to his marriage to Maria Elena, but the interest purchased with marital funds would be a marital asset. As is true of the first limited partnership, any enhancement in value of William's nonmarital share because of the use of marital funds or a party's efforts would be a marital asset. The two remaining limited partnerships were purchased during the course of the marriage and are marital assets.
Maria Elena received jewelry from William during the marriage. That jewelry, as well as any other interspousal gifts, is a marital asset subject to equitable distribution under section 61.075(5)(a)(3).
The money that Maria Elena removed from the joint bank accounts at the *839 time the parties separated was a marital asset subject to equitable distribution. Since Maria Elena testified that she spent this money, the trial court will need to adjust the distribution to account for these expenditures. Appropriate credit shall be given for any marital expenses paid for with that money.
Finally, for purposes of the remand we note that the equitable distribution statute has recently been amended to require that specific factual findings be made and included in the judgment. Section 61.075(3), Fla. Stat. (1991).
The final judgment is affirmed insofar as it dissolves the marriage of the parties. The remainder of the judgment is reversed and remanded with directions to equitably distribute the marital assets.

ON MOTION FOR REHEARING
During the pendency of this appeal, appellee Maria Rosenfeld filed a petition in bankruptcy, resulting in a stay of proceedings here. Subsequently, this court was advised that the bankruptcy proceeding had concluded and this appeal proceeded to decision without objection by either party.
By motion for rehearing appellee wife contends that the husband's claims were discharged by the wife's discharge in bankruptcy. The appellant husband, William Rosenfeld, asserts the contrary.
As the Discharge of Debtor is a standard form which does not identify with particularity the debts which have been discharged, and as the record of the bankruptcy proceeding is not before us, we are unable to make a determination of the issue. We therefore deny the motion for rehearing, but do so without prejudice to the wife to show the trial court on remand what matters are barred from further consideration by reason of the discharge in bankruptcy. This must be the first order of business on remand. Thereafter, the proceedings on remand shall not extend to the matters precluded by reason of the Discharge of Debtor.
NOTES
[1] It should be noted that Maria Elena was aware of these expenditures. Indeed, she often wrote the checks for them. She was also aware of other of William's expenses that she complained of in the trial court. All of these expenditures were made from the outset of the marriage.
[2] A different question would be presented if, for example, during the pendency of the divorce proceeding, a spouse intentionally squandered assets so there would be none available for equitable distribution. See id. at 823 (majority opinion), 824 (concurring opinion). For purposes of this case we need not undertake a comprehensive definition of circumstances which constitute waste or misuse sufficient to affect the equitable distribution of assets. See generally Annotation, Spouse's Dissipation of Marital Assets Prior To Divorce As Factor In Divorce Court's Determination Of Property Division, 41 A.L.R. 4th 416 (1985). The circumstances argued by the wife in this case do not constitute waste or misuse.
[3] The parties to the present proceeding married in 1983. The attorney's fee payment occurred in 1983; the support payments were made in 1983-85. The parties separated in 1988.
[4] These were payments in 1985 and 1986.