636 So.2d 536 (1994)
Harrell Charles MURRAY III, Appellant,
v.
Mary Anne MURRAY, Appellee.
No. 93-3279.
District Court of Appeal of Florida, First District.
April 13, 1994.
*537 Donna Houghton Thames, Brannon, Brown, Haley, Robinson and Cole, P.A., Lake City, for appellant.
Robert A. Sandow, Live Oak, for appellee.
PER CURIAM.
The husband, Harrell Charles Murray, appeals from a final judgment of dissolution of an 18-year marriage which, among other things, awarded the marital home to the wife, Mary Anne Murray. Appellant raises three points on appeal: (1) Whether the trial court abused its discretion in awarding the wife sole ownership of the marital home based on expenditures made during the marriage and the husband's alleged marital misconduct, (2) whether the trial court erred in failing to consider jewelry purchased by the parties during the marriage as a marital asset subject to equitable distribution, and (3) whether the trial court abused its discretion in requiring the husband to pay $615 per month in child support. We find no error as to the amount of child support, and affirm as to that issue without further discussion. We find, however, that the trial court erred in awarding the marital home to the wife based upon the alleged misconduct of the husband which took place several years prior to the breakup of the marital relationship. We also determine that the trial judge made insufficient findings concerning equitable distribution of the wife's jewelry to permit proper appellate review of that issue. We, therefore, reverse the equitable distribution scheme adopted by the trial court.
The wife filed for dissolution of marriage in August of 1992. The parties were the only ones who testified at the dissolution proceedings. According to the testimony, the parties purchased their home in Lake City, Florida, in 1987 for approximately $86,000. The parties had put a $40,000 down payment on the home from the money they had derived from the sale of previous homes. The estimated value of the home in 1993 was $110,000, with an existing mortgage of approximately $42,700.
In December of 1989, the husband, a nuclear medical technologist, pled guilty to felony charges concerning intentionally overdosing a patient with radiation sometime in *538 1987.[1] When the husband tried to renew his license, his application was turned down based on the prior felony conviction. As a result, the husband lost his job in March of 1992. The wife testified that the family lost approximately $30,000 in income during the time that the husband was unemployed.[2]
The judge heard testimony from the wife that the husband had expended a great deal of money since moving to Lake City, i.e., $2,100 for club activities; $3,169 on coins, stamps, and cottage collections; $18,000 on his Visa card which included such items as loans of $5,800 and $1,700 made by the husband to a local jeweler. The parties also spent $9,125 defending the husband on the felony charges. An additional $2,000 in family funds were expended paying the husband's fines and probation fees resulting from the felony conviction. The wife also testified that the husband received a joint income tax refund of $2,000 in 1992, to which he forged his wife's signature and spent the money for his own purposes. The trial court accepted the wife's testimony as to that occurrence, and found that the husband never accounted for the expenditure of the funds.
A final order of dissolution was entered on June 30, 1993. The trial court awarded the major asset of the parties, the marital home, to the wife based upon 1) the husband's expenditures since moving to Lake City, 2) bad loans made by the husband, 3) all losses resulting from his felony conviction,[3] and 4) expenditure of the 1992 tax refund without the consent or knowledge of the wife. The trial judge, without making any specific findings, awarded the husband all the tools which had been removed from the home, while the wife was allowed to retain all of the jewelry given to her by the husband. The wife testified that the tools were of equal value to the value of the jewelry which had not been given to her as a gift from the husband. The husband estimated that the value of the jewelry that he had given to the wife was approximately $20,000. Under section 61.075(5)(a)3, Florida Statutes (1991), gifts from one spouse to another should be treated as marital assets. Thibault v. Thibault, 632 So.2d 261 (Fla. 1st DCA 1994). There is no dispute concerning the other items of property distributed to the parties. Appellee argues that the unequal distribution is justified based on the husband's misconduct.
The equitable distribution statute provides that in making an equitable distribution, the trial court must distribute the assets and liabilities of the parties in equitable proportions, considering all relevant factors including the "contribution of each spouse to the ... incurring of liabilities... ." § 61.075(1)(g), Fla. Stat. (1991). Misconduct of a party, however, will not justify an unequal distribution of assets absent evidence demonstrating a sufficient relationship between the misconduct and the dissipation of assets. Noah v. Noah, 491 So.2d 1124 (Fla. 1986); Bell v. Bell, 587 So.2d 642 (Fla. 1st DCA 1991). Expenditures and investment decisions not rising to the level of misconduct also will not normally support an unequal distribution of assets. Rosenfeld v. Rosenfeld, 597 So.2d 835 (Fla. 3d DCA 1992). In Rosenfeld, the court indicated that it would not start down a path to determine which spouse was a more prudent investor or spender by reviewing expenditure and investment decisions made throughout the marriage. Id. at 837. The scope of the court's responsibility to review decisions made during the marriage has been further limited by defining "dissipation" as "where one spouse uses marital funds for his or her own benefit and for a purpose unrelated to *539 the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990) (emphasis added).
Many of the matters relied on by the trial court in making the distribution decision here arose well before there was any evidence of an irreconcilable breakdown in the marriage. The criminal behavior of appellant occurred prior to the parties buying the house in Lake City in 1987. The legal expenses that resulted would have been greater if the course Mrs. Murray advocated had been followed. Appellant pled guilty to the charges in 1989, over three years prior to the parties separation. Many of the expenditures in question were paid from a joint account and were paid with checks signed by the wife. Several of these expenditures may be characterized as nothing more than investment and purchasing decisions made during the course of the marriage relationship. During a large portion of the period from 1987 to 1992, when the wife complains that the assets were being dissipated, the husband worked and the wife remained at home and received the benefits of the marital relationship. Under these circumstances, neither the loans nor the expenditure decisions justify the unequal distribution scheme adopted by the trial court.[4]
We are also unable to determine from the record before us whether the trial court properly considered the jewelry of the wife in making the equitable distribution. The trial judge failed to make a finding on whether the jewelry (including items given to the wife by the husband) constituted marital or non-marital assets. Nor did the trial judge address or make a finding concerning the value of the jewelry. Absent these findings, we cannot determine whether the assets were equitably distributed. We, therefore must reverse the equitable distribution scheme, and remand for further proceedings. Dozier v. Dozier, 606 So.2d 477 (Fla. 1st DCA 1992).
BARFIELD and BENTON, JJ., concur.
WOLF, J., concurring in part and dissenting in part with written opinion.
WOLF, Judge, concurring in part and dissenting in part.
I concur with the result reached by the majority in reference to the equitable distribution scheme in all respects but one. I would allow the trial judge to consider the legal fees and fines that resulted from the criminal charges against the appellant when determining the appropriate distribution of property. I believe that pursuant to section 61.075(1)(g), Florida Statutes, trial courts should be given great discretion to determine whether serious misconduct has resulted in either a direct dissipation of marital assets, or an adverse impact on the standard of living of the parties. While I agree that the trial court should not be put in the posture of second guessing expenditures or business decisions made during the marriage, where serious misconduct (whether it be criminal conduct or other conduct offensive to the marital relationship) has occurred, a trial judge should be able to consider any negative financial impact resulting from the misconduct.
NOTES
[1] The husband testified that he only pled guilty to spare the legal expenses associated with a trial, and that the wife encouraged him to fight the charges. The wife did not dispute this account.
[2] There is no other record support for this allegation, and based upon the time period that the husband was unemployed, as well as the undisputed testimony that the husband worked at odd carpentry jobs until he started his present employment, the allegation appears contrary to the record.
[3] The trial court offset $30,000 against Mr. Murray's share of marital assets on the theory that his radiological misconduct caused a diminution of his gross income in that amount. We disapprove of this treatment of "lost income" under the particular facts of this case, whatever the amount.
[4] The only alleged misconduct which occurred on or about the time of the irreconcilable breakdown of the marriage in 1992 concerned the expenditure of a $2,000 income tax refund check which the wife alleged was placed in a separate account over her objection and was not used for marital purposes.