749 So.2d 584 (2000)
Jose SANTIAGO, Appellant,
v.
Aladina SANTIAGO, Appellee.
No. 5D98-2339.
District Court of Appeal of Florida, Fifth District.
January 28, 2000.
*585 Jerry S. Luxenberg, Orlando, for Appellant.
Marcia K. Lippincott of Marcia K. Lippincott, P.A., Lake Mary, for Appellee.
W. SHARP, J.
We agree with appellant, Jose Santiago, the former husband, that error occurred in this case in the formulation of the equitable distribution award of the parties' marital assets, which caused it to be inequitable. We reverse the equitable distribution award and remand for reconsideration. However, we do not imply by so doing, that the distribution of marital assets, on remand, must be equal between the parties.
*586 One error in this case relates to the valuation of a marital asseta vacant lot located in Hendry County. It was entirely allocated to the former husband, Jose, by the equitable distribution award, and to the extent the lot was over-valued at $20,000, this short-changed Jose. He originally listed the lot as worth $21,000 in his financial affidavit, but at the final hearing he amended the financial affidavit to show it was worth $7,400. He also testified that the developer of the subdivision where the lot is located had filed for Chapter 11 bankruptcy, and he recalled the lot was assessed for tax purposes at only $1,200. The former wife, Aladina, presented no evidence about the value of the lot. Thus, there is no competent evidence to support the trial court's finding the lot is worth $20,000. At best it supports a valuation of $7,400.
The second error in this case was the trial court's award of Aladina's retirement account ($41,567) wholly to her, although it is a marital asset to the extent it was earned during the marriage and up and until the time the parties separated in 1993.[1] The trial court stated it made this award because Jose had quit his job in 1991, withdrew his $18,000 retirement account over his wife's protests, and by the time the parties separated, had spent all of his retirement funds. This finding does not support the allocation of all of Aladina's retirement account solely to her. See Murray v. Murray, 636 So.2d 536 (Fla. 1st DCA 1994); Eckroade v. Eckroade, 570 So.2d 1347 (Fla. 3d DCA 1990).
However, based on this record, it appears that there may be off-sets against Jose's share of the marital assets, which, if buttressed by appropriate findings,[2] could be made by the court on remand. Jose testified that he used $6,500 of his retirement funds to make a loan to a cousin in New York, which was at the time of the dissolution, apparently uncollectible. Aladina testified she had objected to his making the loan. "I didn't sign any paper, I did not agree, so you don't find any papers that sign for that." The court found that this was an improvident investment, made contrary to the wife's wishes. Thus, this bad investment (or at least Aladina's half-interest in it) could be properly allocated to Jose or assessed against Jose's share of the marital assets.[3] Further, Jose also testified he had used $2,000 of his retirement funds to purchase a mobile home in which to live, when the parties separated. That sum is properly allocated to Jose, and can be used to off-set his portion of the remainder of the parties' marital assets.
The court also concluded that the balance of Jose's retirement account, some $9,500 was not spent on the parties' marital debt or expenses. Aladina testified that after Jose quit his job in 1991 she had been the sole support of the family, and she had no idea how Jose had spent the rest of his retirement funds. Jose testified he used the funds to pay family expenses. Since the court resolved this dispute in favor of Aladina, this could also support a less than equal award of the marital assets still in existence.[4]
At the trial, Aladina testified that after Jose quit his job in 1991, she carried the full burden of paying the two mortgages on their residence, paying all of the parties' living expenses and supporting the parties' son who was in college. Jose did not work during that time, although he attended UCF and took a real estate course. In his closing argument, the attorney *587 for Jose acknowledged that Aladina had paid the two mortgages, and he agreed that perhaps, "to be fair," Aladina should be given "some credit" for the $10,000 reduction of principal on the two mortgages after the parties separated in 1993. The court stated at the hearing that it felt that Aladina should be awarded a larger amount of the marital assets than Jose because she worked continually during the marriage and since 1991 bore the primary support of the family. However, because of the other awards which favored Aladina, he split the marital residence equally between the parties. On remand, that allocation may also be reconsidered.
AFFIRMED in part; REVERSED in part; REMANDED.
DAUKSCH, J., concurs.
THOMPSON, J., concurs in part and dissents in part, with opinion.
THOMPSON, J., concurring in part and dissenting in part.
I agree with the majority opinion except for the distribution of the $6,500 loan to Jose Santiago. The parties were married for 30 years before Jose decided to retire. He received $18,000 from his AT & T retirement account in 1991 and deposited the money into the parties' joint checking account. Shortly after his retirement, over the objection of the former wife, he lent his cousin$6,500 to start a long-distance moving company. When his cousin did not repay the loan, both parties considered it a marital debt and attempted unsuccessfully to collect it. That is all the evidence presented to the court about the loan. There was no evidence presented upon which the court could have concluded that Jose's loan to his cousin, which was made from the joint checking account two years before the parties separated, constituted waste or misuse of marital assets. In justifying the disparity in the distribution, the trial court wrote that it was "because of the Husband's conduct in voluntarily and improvidently choosing, against his Wife's pleading, to quit his job with AT & T and abandon the retirement benefits that would have accrued to him had he kept working."
It appears the trial court sought to punish Jose for quitting his job two years before the parties separated. This is not an appropriate basis for the unequal distribution. In Rosenfeld v. Rosenfeld, 597 So.2d 835 (Fla. 3d DCA 1992), the court held that in making an equitable distribution of marital assets, it was improper for the court to revisit the parties' expenditures throughout the marriage and to retroactively decide which of these expenditures should or should not have been made. See also Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988). Both parties have tried to collect the debt and have failed. Therefore, on remand, I would instruct the trial court to divide the debt between the parties.
NOTES
[1] § 61.076, Fla. Stat. (1997).
[2] § 61.075(1) and (3); Whelan v. Whelan, 736 So.2d 732 (Fla. 4th DCA 1999); Calderon v. Calderon, 730 So.2d 400 (Fla. 5th DCA 1999).
[3] § 61.075(1)(g) and (i); Barner v. Barner, 716 So.2d 795 (Fla. 4th DCA 1998); Jonsson v. Jonsson, 715 So.2d 1064 (Fla. 5th DCA 1998); Crockett v. Crockett, 708 So.2d 329 (Fla. 1st DCA 1998).
[4] § 61.075(3); Barner v. Barner, 716 So.2d 795 (Fla. 4th DCA 1998).