864 So.2d 1193 (2004)
Andrew SCHNEIDER, Appellant,
v.
Ivy SCHNEIDER, Appellee.
No. 4D02-3629.
District Court of Appeal of Florida, Fourth District.
January 14, 2004.
Rehearing Denied February 20, 2004.
*1194 Cynthia L. Greene of Law Offices of Greene, Smith & Associates, Miami, and Law Offices of Fischler & Friedman, P.A., Fort Lauderdale, for appellant.
H.T. Maloney of Patterson & Maloney, Fort Lauderdale, for appellee.
GROSS, J.
We affirm the final judgment of dissolution of marriage and write to address two issues.
The final judgment awarded shared parental responsibility of the parties' three children. The former husband challenges a portion of the final judgment which provided:
Each parent shall share in all important decisions pertaining to the children's health, education and travel. It is the intent of this final judgment that each parent shall fully cooperate with each other in making joint decisions relating to the child[ren].
In the event the parties after discussing said issue are unable to agree on an issue which concerns the [children's] health, education or travel, then it is the intent of the court order that the primary residential custodian has the right to make said decision without the necessity of court intervention. The non residential parent, however, is not prevented from seeking this court's review and/or modification of this provision upon proper petition or motion.
The former husband contends that giving the parties shared parental responsibility, but then making the former wife the final decision-maker over the children's health, education, and travel, is "precisely the type of `covert' sole parental responsibility award" that this court previously struck down in Kuharcik v. Kuharcik, 629 So.2d 224 (Fla. 4th DCA 1993).
The final judgment at issue in Kuharcik stated that the "[p]arents are to consult each other on long range and major decisions, and if no agreement can be reached, the primary residential parent will decide." Id. at 225. We reversed the final judgment "[b]ecause the trial court failed to follow the intent of section 61.13 and failed to delineate [the] specific aspects of the child's welfare [over which the] wife should have ultimate responsibility." (Emphasis in original). We directed the trial court to determine "which specific aspects of the child's welfare [the wife] should have ultimate responsibility over." Id. (emphasis in original).
The holding of Kuharcik was only that giving the primary residential parent unlimited say over all matters regarding the children was not compatible with shared parental responsibility. The case did not forbid the delineation of areas where one parent would have final decision-making authority, in situations where the parties were unable to come to an agreement.
Indeed, section 61.13(2)(b)2.a., Florida Statutes (2002), allows a trial court to give *1195 one parent the ultimate authority over specific matters when ordering shared parental responsibility:
In ordering shared parental responsibility, the court may consider the expressed desires of the parents and may grant to one party the ultimate responsibility over specific aspects of the child's welfare or may divide those responsibilities between the parties based on the best interests of the child. Areas of responsibility may include primary residence, education, medical and dental care, and any other responsibilities that the court finds unique to a particular family.
The evidence in this case supported the trial court's decision to give the former wife the final say on the children's health, education, and travel.
The former husband had screamed at one of his son's teachers, leaving her in tears, because the teacher had suggested that the boy might need a math tutor. On another occasion, the parties took their daughter to see an occupational psychologist. When the doctor commented about the daughter's poor behavior in the waiting room, the former husband remarked that he would not entertain any further opinions from the doctor. These incidents supported the former wife's testimony that her husband would not accept feedback on his children that suggested any need for improvement.
The former husband argues that if "the Final Judgment is construed as giving the Wife sole parental responsibility as to specific aspects of child-rearing, then such an award is necessarily erroneous because the Wife never sought such an award in her pleadings." He relies upon McKeever v. McKeever, 792 So.2d 1234 (Fla. 4th DCA 2001). In that case, this court held the father, having only asked for shared parental responsibility, was improperly given sole parental authority over the education of the child.
Here, the final judgment cannot be interpreted as giving the former wife sole parental authority. The trial court has implemented a rational decision-making plan in the event the parties are unable to agree about three aspects of the children's lives. Section 61.13(2)(b)2.a. contemplates the decision-making mechanism imposed in this case, because many aspects of children's lives will not wait for their parents' agreement or the mediating decision of a judge.
Given the hostility between the parties throughout this litigation, the trial court imposed a sensible plan. If the former husband disagrees with a decision, he may seek review by the court. Should the former wife unreasonably take issue with the former husband for the sake of flexing her power, the former husband would be able to seek a modification of the final judgment on this account.
On another issue, the former husband argues that the trial court erroneously treated his creation of an irrevocable trust, of which the parties' three children are the beneficiaries, as one of his assets for the purpose of equitable distribution. We find no error for two reasons. First, the money to fund the trust came from the sale of the husband's medical practice, which he built up during the marriage. Second, the wife was unaware that the husband had created the trust and the evidence demonstrated that he established the trust primarily to deprive his wife of the asset.
The former husband's interest in a medical practice was acquired by a management company. As part of the purchase, the doctors could receive either a "straight out payment" that would incur ordinary income taxes, or a "split dollar arrangement" which had no immediate tax consequences. *1196 Under this second option, the former husband could either become the owner of a life insurance policy purchased by the management company, and borrow against the cash value of the policy, or he could establish an irrevocable life insurance trust, with the value of the life insurance policy going to the beneficiaries of the trust upon the former husband's death.
The former husband chose to establish the irrevocable life insurance trust with the children as the beneficiaries and his mother as the trustee. He established the trust at a time when he was having an extramarital affair, while anticipating a dissolution proceeding and a distribution of marital assets.
As his share of the proceeds from the sale of the practice, the former husband was to receive six payments of $133,000.00. The first payment was placed into the parties' joint bank account and used to furnish the marital residence. The next four payments went into the life insurance trust. A 2003 payment was anticipated for the trust. Thus, a total of $665,000.00 was allocated to the trust.
The former wife believed that her husband had established custodial accounts for the children's college education. Her husband told her that he was selling his medical practice and was getting about $50,000 up front, giving her about $30,000 to furnish a bedroom. He made a vague reference to another $50,000 to $100,000 that he would be receiving within the next year. The former wife did not recall any conversations with her husband concerning a life insurance policy for the children. She did not find out about the trust until after the divorce proceedings began.
Dr. Martin Schiff, a friend of the former husband, testified that at a time before the filing of the divorce, the former husband explained that he was unhappy in the marriage and did not expect to stay married to his wife after the children were grown. The former husband asked Dr. Schiff to keep a secretthat he had arranged to sell his practice, and that he was putting the money into a trust for the children.
The trial court ruled that the former husband had "deliberately conveyed and concealed a marital asset from the wife in the amount of $405,090." The figure of $405,090 reflects the after-tax value of the five annual payments. The court wrote:
that the husband's apparent intent was to deprive the wife of an equitable distribution of this asset. The husband had the ability to direct how the payments would be made. He chose the direction of the payments without the knowledge or consent of the wife and, accordingly, this asset is considered as having been distributed to the husband. In this case, considering the value of the marital residence, there are enough other assets to divide to equalize this fraudulent concealment and dissipation of the marital asset.
The former husband's main argument is that because he does not benefit from the trust where the children are the beneficiaries, the trial court erred in considering the trust a marital asset which it assigned to the husband.
The former husband points this court to Hedendal v. Hedendal, 695 So.2d 391 (Fla. 4th DCA 1997). There, the parties had maintained funds in a stock brokerage account. The husband removed $24,000 from this account to set up an "educational account" in an "irrevocable trust for the benefit" of the parties' son. Id. at 392-93. This court reversed the trial court's determination that these funds would be considered an asset of the husband, holding that, "the husband should not be assessed the $24,000 in the educational fund as the monies are in an irrevocable trust for the *1197 benefit of the son and cannot be reached by the husband." Id. at 393.
Hedendal does not indicate the circumstances of the creation of the irrevocable trust. The case does not stand for the proposition that a spouse may unilaterally direct marital funds into an irrevocable trust and thereby transform the funds into a non-marital asset not subject to equitable distribution.
The trial court's findings regarding the husband's creation of the insurance trust amounted to a "depletion" of marital assets within the meaning of section 61.075(1)(i), Florida Statutes (2002), a relevant factor to consider in fashioning an equitable distribution.
The former husband emphasizes that the parties' children are beneficiaries of the trust, but this argument misses the point. The trial court's decision recognized that the wife should have had a voice in how the marital funds were allocated for the children. See Santiago v. Santiago, 749 So.2d 584, 586 (Fla. 5th DCA 2000) (indicating that loan to husband's cousin could be charged against husband in equitable distribution, where wife did not consent to the loan). A party to a dissolution cannot use the children as pawns to set up trusts or other stratagems to manipulate equitable distribution.
AFFIRMED.
WARNER and HAZOURI, JJ., concur.