920 So.2d 151 (2006)
Jimmy R. BOUTWELL, Appellant,
v.
April A. ADAMS, Appellee.
No. 1D04-3575.
District Court of Appeal of Florida, First District.
February 3, 2006.
*152 Mark M. Green, of Coker, Myers, Schickel, Sorenson & Green, Jacksonville; Michael J. Korn, of Korn & Zehmer, P.A., Jacksonville, for Appellant.
Nancy N. Nowlis and Barry L. Zisser, of Zisser, Robison, Brown, Nowlis & Maciejewski, P.A., Jacksonville, for Appellee.
BROWNING, J.
Jimmy R. Boutwell, the former husband, appeals an amended final judgment dissolving his marriage to Appellee, April A. Adams, the former wife. The former husband *153 contends that the trial court abused its discretion, first, in making a substantially unequal distribution of marital assets (including the marital home) in favor of the former wife without any legal justification or record support; and second, in ruling that the former husband's non-marital A.G. Edwards brokerage accounts appreciated in value during the marriage due to marital labor. Because the reasons given by the trial court for the unequal distribution of marital assets and liabilities are unsupported by the record or are unclear, reversal is necessary. While affirming the dissolution of the marriage itself, as well as the trial court's findings relating to the appreciation in value, valuation, and distribution of the former husband's A.G. Edwards brokerage accounts, we reverse the remainder of the equitable distribution scheme and remand for further proceedings in accordance with the requirements of section 61.075, Florida Statutes (2002).
The parties were married in October 1994. The former wife filed the petition to dissolve the seven-year marriage in January 2002; the former husband filed an answer and counter-petition. No children were born or adopted during the parties' marriage. The primary issue in the dissolution proceedings related to equitable distribution. Section 61.075, Florida Statutes, sets out the governing criteria for equitable distribution, and a trial court's rulings on equitable distribution are reviewed under the "abuse of discretion" standard. See Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla.1980); Lafaille v. Lafaille, 837 So.2d 601 (Fla. 1st DCA 2003).
The premise of section 61.075(1), Florida Statutes, is that the distribution of marital assets and marital liabilities between the parties "should be equal, unless there is a justification for an unequal distribution based on all relevant factors." See Herrera v. Herrera, 673 So.2d 143 (Fla. 5th DCA 1996). Where one spouse is awarded a disproportionate share, as the former wife was in the case at bar, the trial court is required to make findings to justify the disparity. See Widmer v. Widmer, 713 So.2d 1054, 1055 (Fla. 5th DCA 1998); Herrera.
The parties stipulated to the division of the former wife's Bracco retirement/pension plans. The trial court distributed the remaining marital assets pursuant to section 61.075(1), Florida Statutes. The marital assets and marital liabilities identified by the trial court total $406,743.78 and $134,432.00, respectively. The trial court awarded the former wife $313,739.50 of the marital assets and $106,780.00 of the marital liabilities, and awarded the former husband $93,004.28 of the marital assets and $27,652.00 of the marital liabilities. When the marital liabilities are subtracted from the marital assets, the former wife's ultimate share is 76%, with the former husband receiving only 24%. Such a glaring discrepancy must be supported by findings based on the record. See § 61.075(1) & (3), Fla. Stat.
The trial judge gave three reasons to justify the unequal distribution: 1) the former husband's having incurred significant credit-card debt after the petition filing date; 2) the former husband's having transferred marital assets into Boutwell Brothers (a subchapter "S" corporation in which he and his brother owned 50-50 shares), with no attendant benefit to the former wife; and 3) the former wife's having retirement/pension benefits (whereas the former husband has no such benefits from his employment). Given the instant record, we conclude that these grounds are all insufficient to support the unequal distribution.

*154 A. Former Husband's Credit-Card Debt

To try to explain and justify the trial court's unequal distribution scheme, the former wife contends that the former husband ran up his credit cards debt when he had other immediate sources of funds to support himself, e.g., his A.G. Edwards brokerage accounts. The trial court acknowledged the fact that the parties equally split the household expenses and that she paid her debts before the dissolution, but that he incurred $96,521.27 in credit-card debt, more than $50,000.00 of which represented post-filing debt. The former husband testified that he had incurred the credit-card debt rather than tap into his brokerage accounts because the interest rates on his credit cards were lower than the returns he could expect to earn in the stock market. The court found that the former husband's accumulation of credit-card debt was done in bad faith and constituted "an intentional incurrence of unnecessary debt," acts that the court considered in fashioning an equitable distribution of the parties' assets and liabilities. Competent substantial evidence supports the trial court's decision to make the former husband solely responsible for his substantial non-marital debts on credit cards in his name only. However, the former husband correctly notes that factoring these debts into the equitable distribution scheme unfairly penalized him twice for incurring the same debts. In this context, he was improperly short-changed.

B. Former Husband's Putting Marital Assets into Boutwell Brothers
The former husband challenges the trial court's finding that he "sank marital assets" into the Boutwell Brothers business, a nonmarital asset that he owned equally with his brother and from which, according to the court's findings, the former wife "did not benefit." At the dissolution trial, the former wife offered "surprising" documentary evidence (over an objection), taken off the former husband's computer, of the corporation's gross billings over a five-year period. The former wife alleged that the former husband had withdrawn only 50% of his billings from the Boutwell Brothers account, yet she candidly admitted at the trial that she had neither seen, nor asked to see, any books or records to substantiate her allegations.
The former husband argues that, without more, gross billings in the amount of $633,000.00 are not determinative of anything relevant, for gross collections do not encompass all necessary deductions and expenses, and any remaining income (or loss) would have been shown on a joint tax return. Profits and losses in a subchapter "S" corporation flow or pass through directly to each of the shareholders. See 26 U.S.C.A. § 1366 (West Supp.2005); Zold v. Zold, 911 So.2d 1222, 1224 n. 2 (Fla.2005). Losses were deducted from the parties' joint federal income tax returns; thus, the former wife received the benefit of Boutwell Brothers' losses. The unrebutted expert valuation found that Boutwell Brothers had only a nominal value; in fact, the business lost money every year during the marriage and decreased in value during the marriage. The former husband opined that the business had no value other than the value of its equipment. The former husband testified that any monies he did not take out as wages were used for reimbursement of travel and other expenses, social security, Medicare, and withholding and administrative expenses. He asserts there was nothing sinister or improper in his use of the business, for he needed a corporate vehicle for receiving payments for his consulting jobs before he formed St. Johns Consulting after parting ways with his brother.
*155 The former wife complains that the corporation, the accountant, and the former husband "conveniently lost all records" relating to how much capital he retained in Boutwell Brothers, and that the former husband is "walking away" from the marriage with his nonmarital business. The former wife did not claim that the business had been converted into marital property by the former husband's marital contributions. She contends that she could not have proven the value of Boutwell Brothers because relevant evidence was unavailable to her.
We agree with the former husband's assertion that the former wife's complaint of not having all the records from the business because they were conveniently "lost" or "missing" does not, by itself, support a conclusion that the former husband had improperly sunk or hidden funds in the corporation or had thwarted discovery. The parties' jointly filed federal income tax records refute the suggestion that the former wife garnered no benefits from Boutwell Brothers. "As a general rule, expenditures and investment decisions which do not rise to the level of misconduct will not support an unequal distribution of marital assets." Branch v. Branch, 775 So.2d 406, 407 (Fla. 1st DCA 2000). "Misconduct of a party, however, will not justify an unequal distribution of assets absent evidence demonstrating a sufficient relationship between the misconduct and the dissipation of assets." Murray v. Murray, 636 So.2d 536, 538 (Fla. 1st DCA 1994). Therefore, the former husband's involvement and activities in his family business do not provide an evidentiary basis for the unequal distribution of marital assets.

C. Former Wife's Retirement/Pension Benefits
The final reason given by the trial court for the unequal distribution was that the former husband received a substantial sum of money as part of the former wife's retirement and a separate sum from her pension, whereas she obtained no similar retirement benefit from the former husband, from Boutwell Brothers, or from his consulting firm. The former husband contends that the trial court's rationale on this matter is antithetical to Florida's equitable distribution law. The fact that one spouse has earned retirement/pension funds does not mean that the other spouse's distribution can be debited or penalized solely because the other spouse was unable to accumulate such funds.
An example of this principle is where one spouse is employed outside the home and the other spouse is engaged in home-making and child-rearing tasks. The "value" of the home-making spouse's contribution to the marital partnership is not diminished by the lack of a retirement plan, nor should the at-home spouse be penalized for that commendable and valuable endeavor. It is expected that in such cases, any pension, profit-sharing, or retirement funds accumulated during the marriage by one spouse would be deemed as marital assets and, thus, subject to equitable distribution. See Diffenderfer v. Diffenderfer, 491 So.2d 265, 268 (Fla.1986) ("To the extent acquired during the marriage, the expected benefits are a product of the marital teamwork. This, of course, may vary on the facts of each case.").
The former wife notes that the former husband was an independent contractor who did not have "retirement benefits," aside from his A.G. Edwards "nest egg," which he kept separate. She contends that his spendthrift habits, systematic failure to save, and spotty employment record would render it unfair for her to have to share a portion of her retirement/pension benefits with him. The trial *156 court found that the former husband experienced significant periods of unemployment toward the end of the marriage, that he spent time tinkering with his motor vehicle collection when he could have directed more time and energy to securing a job, and that he continued to spend extravagantly and to borrow money despite the lack of a meaningful search for full employment. Competent substantial evidence supports these factual findings. Given that the Florida Legislature has empowered trial courts to consider "other factors necessary to do equity and justice between the parties" in section 61.075(1)(j), Florida Statutes, these findings regarding the former husband's spending patterns and employment history are relevant to the distribution of assets and liabilities. See § 61.075(1)(g), Fla. Stat. (allowing trial court to consider, in devising an equitable distribution plan, "[t]he contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the marital assets and the nonmarital assets of the parties"). Furthermore, the doctrine of "clean hands" applies in Florida as a matter of judicial discretion and public policy. See Ryan v. Ryan, 277 So.2d 266 (Fla.1973); Stewart v. Stewart, 158 Fla. 326, 29 So.2d 247 (1947). On remand, the trial court is directed to clarify that the unequal distribution is not based simply on the lack of a retirement or pension plan in the former husband's occupations.
We AFFIRM the dissolution of the marriage and the rulings relating to the valuation and appreciation in value of former husband's A.G. Edwards brokerage accounts as a result of marital labor, REVERSE the remainder of the equitable distribution scheme, and REMAND with instructions for further proceedings. If justice so requires, the parties may present additional evidence on the issue of equitable distribution. See Burke v. Burke, 864 So.2d 1284 (Fla. 1st DCA 2004).
BARFIELD and WOLF, JJ., concur.