# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D22-466
LT Case No. 2020-30972-FMCI
<mark>CORRECTED</mark>

———————————————

MICHAEL THOMAS SCHMIDT,

Appellant,

v.

DANIELLE RENEE SCHMIDT,

Appellee.

———————————————

On appeal from the Circuit Court for Volusia County.
Stasia Warren, Judge.

Brian P. North, of Kenny Leigh & Associates, for Appellant.

Joan Stefanec Briggs and Garrett L. Briggs, of Adams,
Briggs and Briggs, Daytona Beach, for Appellee.


October 6, 2023


EDWARDS, C.J.,

This appeal is from the final judgment dissolving the parties' marriage of 29 years. Appellant, Michael Thomas Schmidt ("Former Husband"), appeals certain financial rulings made by the trial court that he claims lack factual or legal support and disproportionately favor Appellee, Danielle Renee Schmidt ("Former Wife"). He argues that the amount of permanent alimony

awarded to Former Wife exceeds his ability to pay, that the trial court failed to determine what his monthly net income was, and that the trial court made no quantified findings of Former Wife's needs as far as retroactive alimony. He claims that the inequitable distribution of marital assets and liabilities ordered by the trial court is not justified nor supported by competent, substantial evidence. We agree. We reverse and remand the final judgment for further proceedings.[1]

The parties had three children during the marriage, all of whom are now adults. Former Wife initially worked in the child day care field. The parties later agreed that Former Wife would stop working outside the home so that she could assume greater responsibility for the children and the obligations associated with running the household. Former Wife has obtained a bachelor's degree and is pursuing a master's degree relevant to her career goal in the field of counseling. During the marriage, Former Husband earned bachelor's and master's degrees that enabled him to be employed in the information technology field. He earned approximately $120,000 annually in the final years of their marriage but was earning $105,000 at the time of trial.

The parties separated and Former Wife filed for dissolution seeking alimony and a distribution of marital assets and liabilities, following which, Former Husband filed a counter-petition. While they were separated, Former Husband voluntarily provided support to Former Wife at the rate of $3,200 per month.[2] However, he ceased making those payments when they were unable, through mediation, to achieve a mutually agreeable resolution of the financial aspects of their dissolution. Former Husband lives with his girlfriend and her two young children.

---

[1] Former Husband does not contest Former Wife's entitlement to an award of permanent periodic alimony in some amount nor does he assert that the trial judge failed to make appropriate findings as to Former Wife's current financial need.

[2] The trial court's mistaken statement that the voluntary support payments were $3,500 per month is not supported by the record.

<u>Analysis of Alimony Issues</u>

*Standard of Review Regarding Alimony Issues*

A claim for alimony, including whether to impute income to a party, is reviewed for abuse of discretion. *Saario v. Tiller*, 333 So. 3d 315, 320–21 (Fla. 5th DCA 2022) (citing *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980)). Discretion is abused only when no reasonable judge could adopt the view of the trial court. *Canakaris*, 382 So. 2d at 1203. However, a determination on the *amount* imputed is reviewed for competent, substantial evidence. *Saario*, 333 So. 2d at 321. Competent, substantial evidence is such evidence "as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred." *Botto v. State*, 307 So. 3d 1006, 1009 (Fla. 5th DCA 2020) (citing *De Groot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1957)).

Former Husband argues that the trial court's awards of alimony constitute an abuse of discretion for three reasons: (1) because the amount of permanent periodic alimony awarded exceeds his ability to pay, (2) because the court's consideration of his girlfriend's income and treatment of it as his own income was erroneous, and (3) because the court awarded retroactive alimony without making the necessary findings of need and ability to pay during the relevant time period.

*Former Husband's Ability to Pay Alimony*

We consider first Former Husband's claim that the amount of permanent periodic alimony awarded exceeds his ability to pay. A "specific factual determination [of] . . . ability to pay alimony" must be made under section 61.08(2), Florida Statutes. After a brief discussion of various financial information, the trial court here made the conclusory finding that Former Husband "has the ability to pay alimony **since the Wife does not** have the ability to provide for her needs and necessities of life" (emphasis added). This is clearly flawed logic, as one spouse's need does not establish the other spouse's ability to pay. Furthermore, findings of ability to pay alimony that are conclusory or sparsely reasoned cannot be affirmed. *Rodolph v. Rodolph*, 344 So. 3d 451, 456 (Fla. 4th  DCA

3

2022); *Cleveland v. Cleveland*, 841 So. 2d 648, 649 (Fla. 4th DCA 2003).

*Canakaris* and its progeny make it clear that calculations of ability to pay must be based on net, rather than gross, income. *Canakaris*, 382 So. 2d at 1197; *Gilliard v. Gilliard*, 162 So. 3d 1147, 1153 (Fla. 5th DCA 2015); *Kingsbury v. Kingsbury*, 116 So. 3d 473, 474 (Fla. 1st DCA 2013). Specific findings on this point are generally required. *Kingsbury*, 116 So. 3d at 475. In his Amended Financial Affidavit, Former Husband claimed that his gross monthly income from work was $8,800, a number the trial court accepted. When Former Husband deducted payroll taxes from his gross salary, that left a net monthly income of $6,756.18.[3]

The law is clear that the reasonable and necessary living expenses of Former Husband are to be deducted from his net income to calculate his actual ability to pay. *See Will v. Will*, 277 So. 3d 182, 183 (Fla. 2d DCA 2019); *Nadrich v. Nadrich*, 936 So. 2d 15, 18 (Fla. 4th DCA 2006). Former Husband claimed $7,405 in monthly expenses; however, the trial court struck $2,360 as being unreasonable.[4] Doing the math, the trial court allowed $5,045 as Former Husband's reasonable and necessary monthly expenses. When these reasonable and necessary monthly expenses are subtracted from his net income of $6,756.18, Former Husband has $1,711.18 remaining as his ability to pay alimony.

---

[3] For the reasons explained in the next section, we do not include Former Husband's paramour's annual income of $35,000 when calculating his net income.

[4] The trial court found the following monthly expenses, totaling $1,400, to be unreasonable, but gave no explanation of why: $290 for phone expenses, $100 for home repair and maintenance, and $1,010 for auto expenses including gasoline and insurance. The final judgment did not set forth what expenses in those categories would be reasonable, although it is uncontested that Former Husband has a vehicle which uses gasoline and must be insured. On remand, the trial court shall set forth its legally supportable reasons for each exclusion and what amount, if any, it deems reasonable.

4

Obviously, one cannot pay $3,000 per month as permanent periodic alimony given that ability to pay. Nor do those figures support the ability to pay additional retroactive alimony of $36,000 over three years at the rate of $1,000 per month.

An award of alimony will be reversed when the obligor's payments "virtually exhaust his income." *Williams v. Williams*, 10 So. 3d 651, 652–53 (Fla. 5th DCA 2009); *see also Bolton v. Bolton,* 898 So. 2d 1084, 1084 (Fla. 4th DCA 2005) (holding excessive award was abuse of discretion); *Squindo v. Osuna-Squindo,* 943 So. 2d 232, 234 (Fla. 3d DCA 2006). Using the calculations above, it is clear that the amount of the permanent periodic alimony awarded would: exceed Former Husband's ability to pay, "absolutely exhaust" his available income, and place him into a deficit position. The award of $3,000 as permanent periodic alimony was therefore an abuse of discretion. We reverse and remand for further consideration of the amount of permanent periodic alimony to be awarded.

*Imputation of Girlfriend's Income*

As part of its consideration of Former Husband's ability to pay, the trial court attributed to him the entire $35,000 annual income of his live-in girlfriend, including governmental benefits for the care of her two children. "It is well-settled that a successor spouse may not be required to pay support owed by his or her spouse to a former spouse." *Montgomery v. Montgomery*, 426 So. 2d 1255, 1256 (Fla. 1st DCA 1983); *accord Fried v. Fried*, 375 So. 2d 46 (Fla. 2d DCA 1979).[5] Logically, the same holds true here for Former Husband's girlfriend, and her financial status "is not ordinarily relevant to the amount of alimony which the divorced spouse is capable of paying." *Montgomery,* 426 So. 2d at 1256. The exceptions discussed in *Montgomery* and *Fried* do not appear to be present in the case at hand. Thus, the trial court erred as a matter

---

[5] The same general rule holds true in child support cases. *See Nadeau v. Reeves*, 328 So. 3d 1001, 1002 (Fla. 4th DCA 2021) (holding it was error to use new spouse's financial contributions to inflate the calculated income of the remarried parent).

of law in considering the income of the Former Husband's girlfriend.

As a matter of factual findings, the trial court also erred. It would appear that the trial court, inexplicably, assumed that neither the girlfriend nor her children had any deductions or expenses of their own to be paid from her own income; thus, imputing 100% of her income to Former Husband. The trial court's additional factual assumption, that the girlfriend's income went into a joint account shared with Former Husband, is directly contrary to the record evidence which shows it went into her separate account. There was no evidence to support any of those assumptions.

Accordingly, on remand, the trial court shall not consider the income of the Former Husband's girlfriend in determining his ability to pay alimony.

*Retroactive Alimony*

As noted above, the trial court ordered Former Husband to pay $36,000 in retroactive alimony at the rate of $1,000 per month for 36 months, on top of the $3,000 per month awarded for permanent alimony. An award of retroactive alimony must be supported by evidence of need and ability to pay during the retroactive period. *Abbott v. Abbott*, 187 So. 3d 326, 328 (Fla. 1st DCA 2016); *Vitro v. Vitro*, 122 So. 3d 382, 385 (Fla. 4th DCA 2012); *Valentine v. Van Sickle*, 42 So. 3d 267, 274 (Fla. 2d DCA 2010).

Here, the trial court made no such findings.

The final judgment sets forth the trial court's rationale for a retroactive award by stating: "Husband stopped all support of the Wife [during the retroactive period] . . . . Therefore, retroactive spousal support is hereby awarded . . . ." The implicit assumption is that, because Former Husband voluntarily paid $3,200 per month from the date of separation until October 2020, she had continued need and he had continued ability to pay during the retroactive period. But the conclusion does not necessarily follow. And the trial court's findings as to the parties' current need and ability are no substitute. In *Henry v. Henry*, the Fourth District

6

reversed because, as here, the trial court made limited, present-tense findings of current need and ability that did not relate back to the retroactive period or otherwise replace the necessary analysis. 191 So. 3d 995, 999 (Fla. 4th DCA 2016).

Absent those necessary findings, the award of retroactive alimony was an abuse of discretion. We reverse the award of retroactive alimony and remand for further consideration and findings on this issue.

<u>Inequitable Distribution of Assets and Liabilities</u>

*Standard of Review*

The standard of review of a trial court's determination of equitable distribution of marital assets and liabilities is abuse of discretion. *Bogard v. Bogard*, 490 So. 2d 43 (Fla. 1986) (citing *Canakaris*, 382 So. 2d at 1197); *Marconi v. Erturk*, 293 So. 3d 19, 20 (Fla. 4th DCA 2020).

Under section 61.075(1), Florida Statutes (2021), when distributing marital assets and liabilities the trial court "must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors," going on to enumerate a non-exhaustive series of factors, (a) through (j). Departures from the presumptive equal division must be justified in findings made by the trial court. *Porzio v. Porzio*, 760 So. 2d 1075, 1078 (Fla. 5th DCA 2000). Here, the trial court did enumerate its findings in accordance with section 61.075, but they do not support the inequitable distribution set forth in the final judgment.

The final judgment awards each spouse the car that each has and the money each has in that spouse's bank accounts. As for marital liabilities, the final judgment requires Former Wife to assume approximately $52,000 in debt while Former Husband is ordered to assume $168,000 in debt.

Former Husband argues that the trial court erred in basing an unequal distribution of marital assets and liabilities on the fact that, during their marriage, he "would deplete any retirement or

7

IRA accounts when he changed jobs." The final judgment states that there was no evidence of intentional dissipation, waste, or depletion of material assets. As a rule, "expenditures and investment decisions which do not rise to the level of misconduct will not support an unequal distribution of marital assets." *Boutwell v. Adams*, 920 So. 2d 151, 155 (Fla. 1st DCA 2006) (citing *Branch v. Branch*, 775 So. 2d 406, 407 (Fla. 1st DCA 2000)); *see also Kyriacou v. Kyriacou*, 173 So. 3d 1111, 1114 (Fla. 2d DCA 2015); *Tradler v. Tradler*, 100 So. 3d 735, 740–41 (Fla. 2d DCA 2012). Accordingly, the use or depletion during the marriage of retirement or IRA accounts by Former Husband while between jobs should not have been a consideration in the equitable distribution of marital assets and liabilities in this case. Because the trial court failed to explain how that factored into its consideration leading to the inequitable distribution, we cannot assume that its error is harmless as we cannot analyze the possible bases for the inequitable distribution. *See Harreld v. Harreld,* 682 So. 2d 635, 636–37 (Fla. 2d DCA 1996).

Additionally, the final judgment awarded to each spouse the money that each spouse had in his or her bank account at the time of trial without any consideration or finding of what all those amounts were.[6] The final judgment once again makes an unsupported statement regarding Former Husband's girlfriend's $35,000 income being "in their joint account" and inappropriately treats it as a marital asset distributed to Former Husband. The trial court here ignored our prior admonition that trial courts "must make specific written findings about the identity and value of the parties' significant assets in order to allow intelligent review." *Barabas v. Barabas*, 923 So. 2d 588, 590 (Fla. 5th DCA 2006). Furthermore, the inequitable distribution of marital liabilities is explained only inferentially by reference to Former Husband's greater earning ability compared to Former Wife's and her inability to pay the debts. Neither is an acceptable legal basis for an unequal distribution of marital liabilities without some further explanation from the trial court. *See Vilardi v. Vilardi*, 225 So. 3d 395, 396 (Fla. 5th DCA 2017).

---

[6] There were findings regarding some, but far from all, accounts.

Accordingly, the distribution of marital assets and liabilities set forth in the final judgment is reversed and remanded for further consideration and the entry of an amended final judgment that includes specific findings of fact and statements of legal bases consistent with this opinion.

Conclusion

The judgment below is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

WALLIS, J., concurs.
EISNAUGLE, J., concurring in part, concurring in result, with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

EISNAUGLE, J., concurring in part, concurring in result with opinion.

While I agree with the majority that the final judgment must be reversed as to permanent periodic alimony, retroactive alimony, and the unequal distribution of assets and liabilities, I would do so on a more limited basis. Therefore, although I agree on the disposition, I cannot join the majority's analysis.

First, I disagree with the majority's analysis concerning Former Husband's inability to pay the alimony award. The trial court made no finding establishing Former Husband's net income. Instead of arguing on appeal that this failure was error, Former Husband argues that he is unable to pay the alimony award based on an *assumed* net income.

But it is the trial court's prerogative to determine net income, not ours. *See Reese v. Reese*, 363 So. 3d 1202, 1211 (Fla. 6th DCA 2023). Therefore, I would not attempt to calculate Former Husband's ability to pay based on our own findings. Given the trial court's unchallenged failure to make a finding on net income, I conclude that we are unable to review the trial court's finding on ability to pay the award—at least not based on Former Husband's income. *See Crouse v. Crouse*, 368 So. 3d 6, 8 (Fla. 4th DCA 2023) ("Because the circuit court did not make a finding about the parties' net incomes, we cannot determine whether the alimony award leaves the Former Husband with significantly less net income.").

Second, Former Husband argues that the exclusion of his monthly expenses for telephone, gas, and auto insurance is error. Given our record, I agree and would reverse for reconsideration of Former Husband's reasonable expenses. While I do not join the majority's primary reason for reversing the alimony award, the trial court's error as to Former Husband's expenses will nevertheless require the trial court to reconsider the award. *See Will v. Will*, 277 So. 3d 182, 183 (Fla. 2d DCA 2019) ("In calculating the appropriate amount of alimony, the trial court is

obligated to consider the former husband's living expenses when determining his ability to pay.").

Third, I agree with the majority that the trial court erred when it imputed income earned by Former Husband's girlfriend to Former Husband. *See Schneider v. Schneider*, 348 So. 2d 612, 613 (Fla. 4th DCA 1977). However, Former Husband did not challenge a lack of factual findings concerning the girlfriend's expenses on appeal. I therefore do not join that part of the majority's discussion.

Fourth, I agree that the award of retroactive alimony is in error because, as Former Husband argues, it is calculated based on Former Wife's need and Former Husband's ability to pay as of the time of trial rather than during the retroactive period. *See Henry v. Henry*, 191 So. 3d 995, 999 (Fla. 4th DCA 2016). I do not join the remainder of the majority's discussion on this issue.

Finally, I agree that the unequal distribution of liabilities must be reversed because it appears the trial court improperly considered the income of Former Husband's girlfriend as a basis for the unequal distribution.

However, I do not join the balance of the majority's analysis because the remaining issues are either not preserved or not raised on appeal. For instance, the majority finds error in the trial court's decision to award "each spouse the money that each spouse had in his or her bank account at the time of trial without any consideration or finding of what all those amounts were." But Former Husband did not challenge this part of the final judgment, and it is not a court's function to seek out and raise arguments for the parties. *See City of Mia. v. Steckloff*, 111 So. 2d 446, 447 (Fla. 1959) ("It is an established rule that points covered by a decree of the trial court will not be considered by an appellate court unless they are properly raised and discussed in the briefs.").

Nevertheless, having concluded that we must reverse the unequal distribution of liabilities, any change in the distribution of liabilities could require a reconsideration of the distribution of assets as well. *See Eagan v. Eagan,* 392 So. 2d 988, 990 (Fla. 5th DCA 1981) ("[W]hen a trial judge is found to be in error as to some

aspect of his disposition the cause should be remanded with sufficient authority that he may again exercise broad discretion to modify the related matters within his original plan for division and support as may be necessary in order to do equity and justice between the parties in view of the changes required by the appellate opinion."); *accord Dwyer v. Dwyer*, 981 So. 2d 1254, 1258 (Fla. 2d DCA 2008) ("Because the equitable distribution scheme has to be revisited on remand to address the use of marital funds to pay off the mortgage on the Husband's commercial property, the trial court must again consider the parties' assets and liabilities and the Husband's claims for credit for the mortgage payments and for a special equity."). Therefore, I would remand for reconsideration of both.